LAVERN VEJRASKA, PERSONAL REPRESENTATIVE OF THE ESTATE OF
NICK VOGLTANZ, DECEASED, APPELLEE, V. SUSAN M. PUMPHREY,
APPELLANT.

488 N.W.2d 514

Filed August 28, 1992.    No. S-89-861.

Lyle Joseph Koenig for appellant.

Jerry D. Anderson, of Heinisch Law Office, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Plaintiff-appellee, Lavern Vejraska, personal representative of the estate of Nick Vogltanz, deceased, filed an amended petition against defendant-appellant, Susan M. Pumphrey, seeking an accounting and damages for conversion. Plaintiff prayed that the court impose a constructive trust on a $5,000 certificate of deposit. Plaintiff contended that defendant had abused her confidential relationship as Vogltanz' attorney in fact by transferring a $5,000 check received by Vogltanz into a certificate of deposit held jointly by Vogltanz and defendant and by taking sole possession of the CD after Vogltanz died.

After a trial to the court, the trial court found for the plaintiff and against the defendant for $5,000. Defendant appeals, contending that the trial court erred in (1) "finding that there was clear and convincing evidence that the decedent did not intend to give [defendant] $5,000.00," (2) "finding that the plaintiff established [her] claim for the imposition of a constructive trust by clear, convincing, and satisfactory evidence," and (3) "finding that the decedent was subject to

undue influence, that the opportunity tò exercise undue influence existed, that there was a disposition to exercise undue influence, and that the result of decedent giving $5,000.00 to [defendant] was the effect of such influence." The trial court made no specific findings as set out in the defendant's assignments of error. Defendant's only defense was that Vogltanz had made a gift to her. We affirm.

We review this equity case de novo on the record and shall consider only the dispositive question as to whether the deceased, Vogltanz, made a gift to defendant.

The record shows the following facts, as testified to by the only witnesses called, defendant and Howard Ach, both of whom were called by plaintiff: Vogltanz' wife, Clara, died in September 1987. No children of Nick and Clara Vogltanz survived. Defendant, her mother, and some of her aunts went to the funeral. At a discussion after the funeral, those present discussed Vogltanz' future care. Defendant, who was Vogltanz' great-niece, was asked if she would drive from her home in Hebron to Vogltanz' home in Milligan every week or two to help Vogltanz pay his bills. Clara had performed this task previously, because Vogltanz had had difficulty writing. Defendant responded that she would think it over, and after consulting with an attorney, agreed to do it. There were apparently no others who offered to help the 91-year-old Vogltanz at this time, although five other relatives were named in his will. Substantial interest in Vogltanz' estate was evident, however, after his death.

Approximately 2 weeks after his wife's funeral, Vogltanz and defendant went to the offices of Vogltanz' attorney, Ach. Ach drew up a durable power of attorney, which made defendant Vogltanz' attorney in fact, so that she "could pay his bills."

The power of attorney document was signed by Vogltanz and defendant on September 18, 1987. Defendant testified that at that time Vogltanz was catheterized and was taking antibiotics and vitamins.

When asked about reimbursement for the help she was providing Vogltanz, defendant testified that "we [Vogltanz and defendant] agreed that I would pay myself mileage back and forth" between Hebron and Milligan. At the time, it was

intended that Vogltanz would remain in his home in Milligan.

Until the first part of November, defendant visited Vogltanz once a week to pay his bills. She would go over the bills with Vogltanz, and she paid the bills by signing the checks on Vogltanz' checking account. Vogltanz employed another woman who did his cooking and cleaning.

In early November, Vogltanz fell and had to be taken to the hospital. There was concern about Vogltanz' being alone, so it was decided that he would stay with defendant. The record is not clear as to the persons making this decision. Defendant described her new role as "to take care of him until I could find another place . . . for him." Defendant, her husband, and two children lived in a two-bedroom mobile home in Hebron. When Vogltanz moved into defendant's home, he was given his own bedroom. Defendant did Vogltanz' laundry and cooking. She took walks with him. She emptied his catheter bag and gave him his vitamins.

When Vogltanz moved in with defendant, defendant and Vogltanz agreed that Vogltanz would pay defendant $200 a week for his care, plus expenses. Vogltanz asked defendant how much a nursing home would charge for his care, and defendant and her mother determined that it would cost between $1,000 and $2,000 per month.

During December 1987, Vogltanz was often in the hospital. He had kidney surgery. He was losing blood and growing weaker, to the point where defendant had to feed him. He was incontinent, and he refused to wear diapers, so defendant had to change his clothes regularly during the day. Due to the increase in the care required, Vogltanz and defendant raised defendant's payments to $250 a week starting in January 1988. Defendant testified that she was paid in full for Vogltanz' care and that she had no claim against the estate for services she had provided.

In December 1987, while he was in the hospital, Vogltanz received an inheritance from his sister's estate. Vogltanz opened the letter containing a $5,000 check, a list of heirs, and a receipt for the check. Vogltanz himself signed the receipt, and defendant witnessed his signature.

Later, when Vogltanz had returned to defendant's home,

defendant asked him what he wanted to do with the check. Defendant testified that Vogltanz told her that he wanted her to have the check. Defendant called her mother to discuss what to do with the check. She testified that she wanted to be able to use the money for Vogltanz, so her mother advised her to put it in a joint certificate of deposit. Defendant testified that she discussed the CD with Vogltanz.

Defendant took the check to First Federal Lincoln in Hebron and bought a certificate of deposit. Defendant endorsed the check "Nicholas Vogltanz Susan M. Pumphrey P.O.A." "P.O.A." meant power of attorney. The CD was held in joint tenancy, with rights of survivorship by Vogltanz and defendant. Defendant gave the bank Vogltanz' Social Security number, and the bank was to report the interest to him.

Vogltanz was 92 years old when he died on January 29, 1988. After his death, defendant delivered Vogltanz' financial records to the personal representative. Defendant did not tell the personal representative that she had the $5,000, nor was there any mention of the $5,000 in the records she turned over to the personal representative. Neither did she inform Ach, Vogltanz' attorney, about the $5,000.

Ach called defendant about August 23, 1988, inquiring about the $5,000. Defendant testified that she told him where the money was and that Vogltanz had given it to her. Ach testified that she told him that Vogltanz had given her the money. He also testified that she said Vogltanz told her to put the money "out at interest." Ach further testified that she told him that the people at the bank had told her to put her name on the CD, that she was entitled to the money because she took care of Vogltanz, and that she was not going to give Ach the money. Ach testified that she said he should call her back and that she would make a decision as to whether she was going to return the money to the estate.

Ach testified that when he telephoned defendant on September 1, 1988, she told him that she had decided to keep the money and that he should talk to her attorney.

We must first resolve a procedural problem. In his petition, plaintiff prayed that a constructive trust be imposed on the CD in question. In her motion for new trial, defendant sets out that

the court erred "in imposing a constructive trust over the gift from Nick Vogltanz to Susan M. Pumphrey." Both parties have briefed and argued the case as though a constructive trust had been imposed on the CD. The judgment of the trial court, as shown on the trial docket, was: "The court finds for the plaintiff and against the defendant and judgment is entered against the defendant in the amount of $ 5,000.00. The defendant is ordered to pay the costs herein." Clearly, no constructive trust was imposed by the trial court in its judgment order.

Nonetheless, we shall consider the case as one concerning a constructive trust. In *Donahoo v. Nebraska Liquor Control Comm.*, 229 Neb. 197, 199, 426 N.W.2d 250, 251 (1988), we held that "cases are heard in this court on the theory upon which they were tried." Similarly, in *Nelson v. Cool*, 230 Neb. 859, 434 N.W.2d 32 (1989), we disposed of the case on the basis of the theory presented by the pleadings on which the case was tried. We shall so consider the case before us.

The imposition of a constructive trust is a form of equitable relief. *Vogt v. Town & Country Realty of Lincoln, Inc.*, 194 Neb. 308, 231 N.W.2d 496 (1975).

> In an appeal in an equity action, it is the duty of this court to try issues of fact de novo upon the record and to reach an independent conclusion thereon without reference to the findings of the District Court. . . . However, when credible evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of facts rather than the opposite.

*Biggerstaff v. Ostrand*, 199 Neb. 808, 810-11, 261 N.W.2d 750, 752 (1978). See, also, *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989).

> "Constructive trusts arise from actual or constructive fraud or imposition, committed by one party on another. Thus if one person procures the legal title to property from another by fraud or misrepresentation, or by an abuse of some influential or confidential relation which he holds

toward the owner of the legal title, obtains such title from him upon more advantageous terms than he could otherwise have obtained it, the law constructs a trust in favor of the party upon whom the fraud or imposition has been practiced."

*Guynan v. Guynan*, 208 Neb. 775, 779, 305 N.W.2d 882, 885 (1981).

Our disposition of this case is based solely on consideration of the legal situation defendant found herself in after others had urged her to assist the deceased, Vogltanz, by entering into an attorney-in-fact relationship with him.

Facts similar to those before us have arisen before in this jurisdiction. In *Ford v. Jordan*, 220 Neb. 492, 370 N.W.2d 714 (1985), the beneficiaries of a will brought an action to impose a constructive trust on property held in joint tenancy by a decedent and the defendants. The decedent had executed a durable power of attorney naming one of the defendants as attorney in fact. The decedent added the defendants' names to her checking account and safety deposit box and changed the ownership of her house to joint tenancy with defendants. One of the defendants drew up the deed. In addition, the defendant acting as attorney in fact transferred title to existing accounts, stocks, and bonds from sole ownership by the decedent to joint ownership with defendants.

We determined that the plaintiffs-beneficiaries in *Ford* had not met the required burden of proof, stating:

The burden of proof is upon one seeking to establish the existence of a constructive trust to do so by evidence which is clear, satisfactory, and convincing in character. . . . Further, the existence of a constructive trust is to be determined by the particular facts, circumstances, and conditions of the individual case. . . .

Assuming for purposes of our analysis that a confidential relationship existed between [decedent] and [defendants] by virtue of the continuous trust placed by the former in the skill and integrity of [defendants], as claimed by the beneficiaries . . . the question becomes whether there is "clear, satisfactory, and convincing" evidence that [defendants] abused that relationship such

that a constructive trust must be placed on all of the property held jointly by [decedent] and [defendants]. We find there is not.

*Ford*, 220 Neb. at 498-99, 370.N.W.2d at 718-19.

*Ford* is not, however, the last word on this issue. The *Ford* decision was made before a dispositive rule of law was set out by this court in *Fletcher v. Mathew*, 233 Neb. 853, 859, 448 N.W.2d 576, 581 (1989), where we stated:

" 'In an action in which relief is sought on account of alleged fraud, the existence of a confidential or fiduciary relationship, or status of unequal footing, when shown, does not shift the position of the burden of proving all elements of the fraud alleged, but nevertheless may be sufficient to allow fraud to be found to have existed when in the absence of such a status it could not be so found, and thus to have the effect of placing the burden of going forward with the evidence upon the party charged with fraud. . . .' "

We went on to hold in *Fletcher* that no gift may be made by an attorney in fact to himself or herself unless the power to make such a gift is expressly granted in the instrument itself and there is shown a clear intent on the part of the principal to make such a gift. We adopted the following reasoning from the South Carolina Supreme Court:

"Effectively, absent express intention, an agent may not utilize his position for his or a third party's personal benefit in a substantially gratuitous transfer. . . .

"Appellant seeks to remove himself from the operation of the general rule. He contends that Mr. Fender orally authorized the transfers. Notwithstanding such a claim, we hold today that any purported oral authorization was ineffective. The power to make any gift must be expressly granted in the instrument itself.

" 'It is for the common security of mankind . . . "that gifts procured [sic] by agents . . . from their principals, should be scrutinized with a close and vigilant suspicion." ' *Harrison v. Harrison*, 214 Ga. 393, 105 S.E.2d 214, 218 (1958). Therefore, in order to avoid fraud and abuse, we adopt a rule barring a gift by an attorney in

fact to himself or a third party absent clear intent to the contrary . . . ." *Fender* [*v. Fender*, 285 S.C. 260, 262, 329 S.E.2d 430, 431 (1985)].

*Fletcher*, 233 Neb. at 860-61, 448 N.W.2d at 582.

The facts in the case before us are similar to the facts in *Fletcher* in all material respects, except, of course, as to the amounts of money involved and the fact that defendant herein rendered valuable services to the 91-year-old Vogltanz when no one else would or could. Plaintiff has the burden of proving a prima facie case of fraud. In this case, plaintiff showed that the defendant held the decedent's power of attorney and that defendant, using her power of attorney, made a gift to herself. In limited situations dealing with an attorney in fact, the *Fletcher* case established that that is sufficient to establish a prima facie case.

The burden of going forward then fell on defendant to establish by clear and convincing evidence that the transfer was made pursuant to power expressly granted in the power of attorney document and made pursuant to the clear intent of the donor.

The trial court determined that defendant had not met this burden. That court had the opportunity to view the witnesses while testifying, and that court apparently did not find defendant convincing. In our de novo review, we also find defendant failed to meet her burden of proof. There was no power to make gifts in the power of attorney document, nor was there sufficient evidence before us to show that Vogltanz had the clear intent to make a gift to defendant. We affirm the action of the trial court.

AFFIRMED.