MIKE CROSBY, APPELLEE, V. BRUCE LUEHRS AND BRUCE LUEHRS, AS PERSONAL REPRESENTATIVE OF THE KENNETH C. OLSON ESTATE, APPELLANTS.

669 N.W.2d 635

Filed October 3, 2003. No. S-02-951.

828

Philip E. Pierce, of Pierce Law Office, for appellants.

Douglas W. Marolf for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Kenneth C. Olson's nephew, Bruce Luehrs, acting as Olson's attorney in fact pursuant to a durable power of attorney, transferred nearly $40,000 out of Olson's bank accounts into a new account that Luehrs opened in Olson's name. The previous accounts had named Mike Crosby (Crosby), Olson's friend and former neighbor, as a payable-on-death (POD) beneficiary, but

the new account did not. Olson died, and by virtue of the transfers, the money that had been in the POD accounts passed through Olson's estate instead of being paid to Crosby. Luehrs, as a named beneficiary of Olson's will, received money from the estate. The question presented in this appeal is whether Luehrs engaged in impermissible self-dealing when he transferred money out of the POD accounts, because the ultimate effect of the transfers was to increase the amount of Luehrs' inheritance.

## BACKGROUND

The material facts of this case are essentially undisputed. Crosby and Olson met when they became next-door neighbors in 1987, and they became good friends. They often had dinner together, and Crosby helped Olson with household chores, even after Crosby moved out of the neighborhood. Crosby testified he did not know Olson had large sums of money and never tried to coerce money from Olson.

In 1997, Olson executed the will that was operative at the time of his eventual death. Olson's will devised his residence and real property to three local charities. The will set aside 10 percent of Olson's remaining assets for division among several local charities. The balance of Olson's estate was bequeathed equally to his sister, niece, and two nephews, including Luehrs. Luehrs was designated as the personal representative of Olson's estate.

In 1999, Olson opened an account at Commercial Federal Savings and Loan that named Crosby and Mary Crosby as POD beneficiaries. In April 2000, Olson opened another account at Commercial Federal Savings and Loan that named Crosby as beneficiary. Olson also obtained a certificate of deposit from West Gate Bank, designated as POD to Crosby or Mary Crosby. Prior to Luehrs' transfer of money from these accounts, they held $39,999.75. The POD designations meant that the balances in the accounts would pass, on Olson's death, to the designated beneficiaries. See Neb. Rev. Stat. §§ 30-2716(8) and 30-2723(b)(2) (Reissue 1995).

In November 2000, Olson executed a durable power of attorney, naming Olson's girl friend, Geraldine Draney, as Olson's attorney in fact and Luehrs as the alternate attorney in fact. As relevant, the document conferred on the attorney in fact the

power "[t]o deposit moneys, withdraw, invest, and otherwise deal with tangible property." The parties do not dispute that absent a conflict of interest, the durable power of attorney conferred upon the attorney in fact the power to transfer money among Olson's financial accounts.

Olson was hospitalized in November 2000, and in January 2001, he was moved from the hospital to a nursing home. Crosby, Draney, and Draney's son all testified that during the final months of his life, Olson was incoherent and unable to conduct his own affairs. Luehrs testified that during those months, Olson was not coherent "all the time." Draney had, pursuant to the durable power of attorney, been handling Olson's deposits and paying his bills, but determined that she "didn't want to handle the stock things and the business part of it." Draney formally withdrew as Olson's attorney in fact on January 19, 2001.

On January 22, 2001, Luehrs opened an account in Olson's name at Adams Bank and Trust in Ogallala, Nebraska. Luehrs was a loan officer and vice president at Adams Bank and Trust and had been a banker for over 20 years. Luehrs began to consolidate Olson's accounts and transferred $39,999.75 from the previously described POD accounts into the new account at Adams Bank and Trust, which did not have a POD designation. Olson had also set aside a large sum of money, approximately $100,000, in similar accounts, designating Draney as beneficiary. Luehrs was in the process of transferring that money as well, but the transfers were not completed before Olson's death.

Luehrs told Draney about his intent to transfer money from the Crosby POD accounts on January 20, 2001. Luehrs told Draney that " '[Crosby] was just a neighbor, and [Olson]'s leaving all that money to a neighbor?' " Luehrs also told Draney that the money might be needed for Olson's care, despite Olson's pension, Social Security and Medicare benefits, health care insurance, and the income from over $300,000 in stocks, bonds, and deposits. Draney's son confronted Luehrs about the transfers; Luehrs explained that he did not think Olson meant Crosby to have that much money, and Luehrs wanted to consolidate Olson's accounts for future needs. Luehrs conceded his remarks to Draney, but explained that he did not believe Olson had meant for that much money to be in the POD accounts. Luehrs explained that in his

opinion, Olson used those accounts to hold profits from his stock transactions until his next buying opportunity, but in this instance, had become ill and never took the money out of the accounts.

Luehrs conceded, at trial, that he had known at the time he transferred the money that he, as a beneficiary under Olson's will, stood to benefit from the transfers. Luehrs admitted that he knew, as a banker, that the POD designation on the accounts gave Crosby no right to the money in the account prior to the death of the account holder. Luehrs testified that he told Olson about his intent to consolidate Olson's accounts and that Olson said that was " '[f]ine,' " but Luehrs conceded that he had no specific instructions from Olson, written or otherwise, to transfer money from the POD accounts. Luehrs testified that he thought it was his duty to preserve Olson's assets and consolidate his accounts. In addition, a certified public accountant and financial planner testified that he had handled Olson's taxes for several years and had advised Luehrs to simplify Olson's estate. The accountant admitted that at the time of that conversation, he did not know that consolidation of Olson's accounts might increase Luehrs' share of the estate.

Olson died on January 28, 2001. Olson's estate inventory set forth a total value, at the date of death, of $471,518.84. Of that amount, $56,800 consisted of real property that, pursuant to Olson's will, was distributed to local charities; local charities also shared 10 percent of Olson's other assets. The remaining assets, pursuant to Olson's will, were distributed to Olson's sister, niece, and nephews, including Luehrs, who individually received $45,265.91.

After Olson's death, Draney told Crosby about the POD accounts and the transfers of money. Crosby testified that until informed by Draney, he had not known of the existence of the POD accounts. On April 11, 2001, Crosby filed a claim against Olson's estate. On April 30, Luehrs, as personal representative of the estate, disallowed the claim. On May 16, Crosby filed a petition for allowance of the claim. In August, the parties stipulated that the amount in controversy was $39,999.75 and, after calculating the applicable inheritance taxes, $35,124.79 was placed in escrow. The parties agreed to stay the probate action. Crosby filed an equitable action in the district court against Luehrs in his

individual capacity and as personal representative of Olson's estate (collectively Luehrs), alleging that Luehrs was not authorized by the durable power of attorney to transfer money from the POD accounts. See Neb. Rev. Stat. § 30-2671 (Reissue 1995).

After a bench trial, the court found that Luehrs had altered the ultimate distribution of Olson's property in such a manner that Luehrs profited from the change. The court cited the general principle that a power of attorney creates an agency relationship, in which the agent is prohibited from profiting from the agency relationship to the detriment of the principal, and noted that Luehrs had acted in detriment to Olson by interfering with Olson's right to dispose of his property as he saw fit. The court entered judgment for Crosby in the amount of $35,124.96. Luehrs appeals.

## ASSIGNMENTS OF ERROR

Luehrs assigns that the court (1) should have found that Crosby did not present a prima facie case of fraud, (2) erred by failing to find that Luehrs was acting pursuant to the durable power of attorney and had the authority to transfer POD accounts to an account which was solely for the benefit of the principal, and (3) erred by failing to find that Crosby did not have standing in this matter.

## STANDARD OF REVIEW

In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Gilroy v. Ryberg, ante* p. 617, 667 N.W.2d 544 (2003). See *Cheloha v. Cheloha,* 255 Neb. 32, 582 N.W.2d 291 (1998).

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion. *Miller v. City of Omaha,* 260 Neb. 507, 618 N.W.2d 628 (2000).

## ANALYSIS

Before considering the specific arguments advanced by Luehrs, it is helpful to set forth the basic propositions of law that will govern our disposition of this appeal. A power of attorney authorizes another to act as one's agent. *Cheloha, supra.* See *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989). An agent holding a power of attorney is termed an "attorney in fact" as distinguished from an attorney at law. *In re Estate of Lienemann*, 222 Neb. 169, 382 N.W.2d 595 (1986). An agency is a fiduciary relationship resulting from one person's manifested consent that another may act on behalf and subject to the control of the person manifesting such consent and, further, resulting from another's consent to so act. *Fletcher, supra.* An agent and principal are in a fiduciary relationship such that the agent has an obligation to refrain from doing any harmful act to the principal. *Cheloha, supra*; *Fletcher, supra.*

Generally, an agent is required to act solely for the benefit of his or her principal in all matters connected with the agency and adhere faithfully to the instructions of the principal. *Cheloha, supra*; *Fletcher, supra.* An agent's duty is to act solely for the benefit of the principal in all matters connected with the agency, even at the expense of the agent's own interest. *Praefke v. American Enterprise Life Ins.*, 257 Wis. 2d 637, 655 N.W.2d 456 (Wis. App. 2002). See, *Cheloha, supra*; *Mischke v. Mischke*, 247 Neb. 752, 530 N.W.2d 235 (1995); *In re Estate of Lienemann, supra.* An agent is prohibited from profiting from the agency relationship to the detriment of the principal or having a personal stake that conflicts with the principal's interest in a transaction in which the agent represents the principal. See, *Cheloha, supra*; *Mischke, supra*; *Fletcher, supra*; *In re Estate of Lienemann, supra.*

No gift may be made by an attorney in fact to himself or herself unless the power to make such a gift is expressly granted in the instrument and there is shown a clear intent on the part of the principal to make such a gift. *Cheloha, supra*; *Mischke, supra.* Absent express intention, an agent may not utilize his or her position for the agent's or a third party's benefit in a substantially gratuitous transfer. *Id.*; *Vejraska v. Pumphrey*, 241 Neb. 321, 488 N.W.2d 514 (1992). An attorney in fact, under the duty of

loyalty, always has the obligation to act in the best interest of the principal unless the principal voluntarily consents to the attorney in fact's engaging in an interested transaction after full disclosure. *Schock v. Nash*, 732 A.2d 217 (Del. 1999). See, *Cheloha v. Cheloha*, 255 Neb. 32, 582 N.W.2d 291 (1998); *Mischke, supra*; *Vejraska, supra.*

The basic policy concern underlying the law that forbids self-dealing is not linked to any duty an agent may have to third parties, but is primarily addressed to the potential for fraud that exists when an agent acting pursuant to a durable power of attorney has the power to make gifts, especially after the principal becomes incapacitated. *Praefke, supra*. See, *Cheloha, supra*, citing *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989); *Vejraska, supra*. A fiduciary will not be allowed to feather his or her own nest unless the power of attorney specifically allows such conduct. *Id*. The law will not permit an agent to place himself or herself in a situation where the agent may be tempted by his or her own private interest to disregard that of the principal. *Mischke v. Mischke*, 253 Neb. 439, 571 N.W.2d 248 (1997). In short, where a fiduciary argues that a power of attorney allowed for self-dealing, that power must be specifically authorized in the instrument. *Praefke, supra*. See *Cheloha, supra.*

Constructive fraud generally arises from a breach of duty arising out of a fiduciary or confidential relationship. *Johnson v. Radio Station WOW*, 144 Neb. 406, 14 N.W.2d 666 (1944), *reversed on other grounds* 326 U.S. 120, 65 S. Ct. 1475, 89 L. Ed. 569 (1945) (supplemental opinion). See, *Wolf v. Walt*, 247 Neb. 858, 530 N.W.2d 890 (1995); *Vogt v. Town & Country Realty of Lincoln, Inc.*, 194 Neb. 308, 231 N.W.2d 496 (1975); *American Driver Serv. v. Truck Ins. Exch.*, 10 Neb. App. 318, 631 N.W.2d 140 (2001). Constructive fraud is a breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud-feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. *Johnson v. Radio Station WOW*, 144 Neb. 406, 13 N.W.2d 556 (1944), *reversed on other grounds* 326 U.S. 120, 65 S. Ct. 1475, 89 L. Ed. 569 (1945). Constructive fraud is implied by law from the nature of the transaction itself. See *id*. The existence or nonexistence of an

actual purpose to defraud does not enter as an essential factor in determining the question; the law regards the transaction as fraudulent per se. See *id.* Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. *Vogt, supra; Johnson, supra.*

In an action in which relief is sought on account of alleged fraud, the existence of a confidential or fiduciary relationship, or status of unequal footing, when shown, does not shift the position of the burden of proving all elements of the fraud alleged, but nevertheless may be sufficient to allow fraud to be found to have existed when in the absence of such a status it could not be so found, and thus to have the effect of placing the burden of going forward with the evidence upon the party charged with fraud. *Fletcher, supra.* In situations involving an attorney in fact, we have determined that a prima facie case of fraud is established if the plaintiff shows that the defendant held the principal's power of attorney and that the defendant, using the power of attorney, made a gift to himself or herself. See *Vejraska v. Pumphrey,* 241 Neb. 321, 488 N.W.2d 514 (1992), citing *Fletcher, supra.* A fiduciary's acquisition of a right of survivorship in property, even absent a present possessory interest, is generally sufficient to establish that a fiduciary has profited from a transaction, see *Fletcher v. Mathew,* 233 Neb. 853, 448 N.W.2d 576 (1989), and *Johnson v. First Nat. Bank,* 253 Ga. 233, 319 S.E.2d 440 (1984), and there is no basis in equity to distinguish such a situation from one in which, as here, a fiduciary's contingent interest in property is testamentary. The burden of going forward under such circumstances falls upon the defendant to establish by clear and convincing evidence that the transaction was made pursuant to power expressly granted in the power of attorney document and made pursuant to the clear intent of the donor. *Vejraska, supra,* citing *Fletcher, supra.* See *Woodward v. Andersen,* 261 Neb. 980, 627 N.W.2d 742 (2001). The fiduciary bears the burden of proving the fairness of the transaction. *Fletcher, supra.* See *Woodward, supra.*

With that framework established, we proceed to consider Luehrs' specific arguments. In support of his first assignment of error, Luehrs argues that Crosby did not prove a prima facie case of constructive fraud, because Luehrs did not gift money

to himself or directly benefit from the consolidation of accounts. Second, Luehrs argues that he acted within the scope of the durable power of attorney and solely for the benefit of Olson. Finally, Luehrs argues that because Crosby had no vested right to the money in the POD accounts at the time of the transfers, Crosby has no standing to maintain an action for the recovery of that money.

### PRIMA FACIE CASE OF CONSTRUCTIVE FRAUD

We turn first to Luehrs' argument that Crosby did not prove a prima facie case of constructive fraud. Obviously, Luehrs does not dispute the existence of a fiduciary relationship with Olson. Instead, Luehrs contends that because he transferred money from the POD accounts to an account opened in Olson's name, the transfers did not benefit Luehrs and did not constitute self-dealing.

However, this argument ignores two incontrovertible facts: Luehrs knew at the time of the transfers that he stood to gain financially as a result, and when Olson died, Luehrs would have gained financially as a result of the transfers, had Crosby's claim against the estate not intervened. Luehrs' argument on appeal that he did not benefit from the transfers is directly contrary to his admission at trial that he knew at the time of the transfers that he, as a named beneficiary of the will, would benefit if the transferred funds passed through Olson's estate. Luehrs argues that he was only 1 of 13 devisees named by the will. However, an examination of the terms of the will reveals that Luehrs was to receive, prior to applicable taxes, approximately 22.5 percent of $40,000 added to Olson's estate by the transfers from the POD accounts. This is hardly an inconsequential amount and is a sufficient benefit to Luehrs for Crosby to prove his prima facie case for constructive fraud. See, *Vejraska v. Pumphrey,* 241 Neb. 321, 488 N.W.2d 514 (1992); *Fletcher v. Mathew,* 233 Neb. 853, 448 N.W.2d 576 (1989).

Luehrs also argues that the transfers did not constitute self-dealing because realization of his gain from the transfers required several presumptions, e.g., Luehrs would survive Olson, and Olson's will would be found valid. Luehrs seems to be arguing that since he was not *certain* to benefit from the transfers, he was

not engaged in self-dealing. But there is no authority for the proposition that certainty of benefit is a requirement of self-dealing, and for good reason. Even had Luehrs directly placed his name in place of Crosby's on Olson's POD accounts, Luehrs' benefit would be contingent upon surviving Olson. There are very few certainties in the world, and Luehrs' argument, if accepted, would effectively preclude recovery for even the most egregious breaches of fiduciary duty.

Instead, the dispositive facts are that Luehrs was aware when he transferred the funds that he was highly likely to profit from the transactions, and as a practical matter, that is what actually happened. Such self-dealing by an agent, in the absence (as here) of distinct authority from the principal expressly granted in the empowering instrument, has been continuously and uniformly denounced as one of the most profound breaches of fiduciary duty, irrespective of the agent's good faith and however indirect or circuitous the accomplishment of the benefit to the agent. *Gagnon v. Coombs*, 39 Mass. App. 144, 654 N.E.2d 54 (1995). The record before us is sufficient to prove Crosby's prima facie case of constructive fraud. Luehrs' first assignment of error is without merit.

### BREACH OF FIDUCIARY DUTY
Since Crosby proved his prima facie case of constructive fraud, the burden of going forward then fell upon Luehrs to establish by clear and convincing evidence that the transfers were made pursuant to power expressly granted in the power of attorney document, and either made pursuant to the clear intent of the principal or necessitated by some compelling interest of the principal. See, *Vejraska, supra*; *Miller v. Peoples Federal Sav. & Loan Ass'n*, 68 Ohio St. 2d 175, 429 N.E.2d 439 (1981). Luehrs argues that his consolidation of Olson's accounts was a proper exercise of his authority under the durable power of attorney. The essence of Luehrs' argument is that the consolidation of accounts was within the authority granted by the durable power of attorney and intended to protect the interest of Olson.

However, the issue is not whether the instrument creating the power of attorney authorized the transfer of money among Olson's financial accounts; rather, the issue is whether the specific

transfers disputed here constituted a breach of Luehrs' fiduciary duty. The fact that Luehrs was expressly authorized by the power of attorney to transfer money among Olson's financial accounts is irrelevant if the authorized act was done for an improper purpose that constituted a breach of his duty of loyalty. See, *id.*; Restatement (Second) of Agency § 387, comment *a.* (1958). Luehrs has failed to explain any sound basis for concluding that the transfers from the POD accounts were in Olson's interest.

Luehrs' most consistent argument, advanced both at trial and on appeal, is that the money in the POD accounts might have been needed to care for Olson. However, this argument is inconsistent with the law governing POD accounts. A beneficiary in an account having a POD designation has no right to sums on deposit during the lifetime of any party. Neb. Rev. Stat. § 30-2722(c) (Reissue 1995). The owner retains sole ownership, and only the owner may withdraw the proceeds or change the named beneficiary during the owner's lifetime. See, § 30-2722; *In re Estate of Platt*, 148 Ohio App. 3d 132, 772 N.E.2d 198 (2002).

Consequently, during Olson's lifetime, the money in the POD accounts belonged solely to him and was available for his use. Even after Olson's death, had the assets of his estate been insufficient to satisfy his creditors, the money in the POD accounts could have been recovered to the extent necessary to pay claims against and expenses of the estate. See Neb. Rev. Stat. § 30-2726 (Reissue 1995). In short, transferring the money from the POD accounts was unnecessary to safeguard the money, as the funds were equally available to Olson, as needed for his care and his estate, both before and after the transfers.

Instead, Luehrs acted against the interest of Olson when Luehrs acted to thwart Olson's presumed intent that Crosby receive the money in the POD accounts. Although Luehrs argues that Olson did not intend for the POD accounts to contain as much money as they did at the time of Olson's death, there is little in the record to support this contention. In the absence of evidence to the contrary, we must assume that Olson was aware of the legal effect of the POD designation that he ordered for his bank accounts and knew when he deposited money into such accounts that, in the event of his death, the money would belong to the named beneficiaries. Rights at death, in joint and POD

accounts, are governed by the principle that a depositor intends account balances to pass at death to his or her survivors. See Prefatory Note, Uniform Nonprobate Transfers on Death Act, 8B U.L.A. 45 (2001).

An agent is authorized to do, and to do only, what it is reasonable for the agent to infer that the principal desires the agent to do in the light of the principal's manifestations and the facts as the agent knows or should know them at the time the agent acts. See, *Gagnon v. Coombs*, 39 Mass. App. 144, 654 N.E.2d 54 (1995); Restatement, *supra*, § 33. If an agent has reason to know the will of the principal, the agent's duty is not to act contrary to it. See *id.* Stated more specifically, if an agent knows that the principal has made a will or otherwise provided for the distribution of assets after the principal's death, the agent should avoid, where possible, taking action that will defeat the principal's estate plan. See Carolyn L. Dessin, Acting as Agent under a Financial Durable Power of Attorney: An Unscripted Role, 75 Neb. L. Rev. 574 (1996). Luehrs, on the other hand, questioned Olson's established intent and acted to frustrate it. Compare, *Litvinko v. Downing & Roussos*, 260 Ark. 868, 545 S.W.2d 616 (1977); *Gagnon, supra.* The purported advantage of simplifying Olson's estate is not a sufficient justification when the agent's method of simplification frustrates the intent of the principal.

We recognize the general principle that a durable power of attorney may provide the attorney in fact with the power to designate a change in the registration of POD accounts and to eliminate the former beneficiaries, if that is in the best interest of the principal. Cf. *Miller v. Peoples Federal Sav. & Loan Ass'n*, 68 Ohio St. 2d 175, 429 N.E.2d 439 (1981). This does not, however, authorize self-dealing absent express authority, or some other compelling explanation for why the challenged transaction was in the best interest of the principal. *Id.* The record before us supports no such explanation. There is no evidence that the money was transferred at the express direction of the principal. Compare, *Ruppert v. Breault*, 222 Neb. 432, 384 N.W.2d 284 (1986); *In re Estate of Lienemann*, 222 Neb. 169, 382 N.W.2d 595 (1986). Any purported oral authorization, even had Olson been competent to issue it, was ineffective. See *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989).

There is no evidence that the transfers were necessary for Olson's support. Compare, *Matter of Estate of Crabtree*, 550 N.W.2d 168 (Iowa 1996); *Plummer v. Estate of Plummer*, 51 S.W.3d 840 (Tex. App. 2001). In short, the record does not support the reasons proffered by Luehrs to explain why the transfers were solely in Olson's best interest.

. Luehrs did not demonstrate, by clear and convincing evidence, that the transfers were authorized by the durable power of attorney. See *Vejraska v. Pumphrey*, 241 Neb. 321, 488 N.W.2d 514 (1992). Irrespective of whether Luehrs was acting in good faith, his actions, viewed objectively, resulted in a benefit to himself, and were unnecessary to protect the interest of his principal. Thus, Luehrs breached his fiduciary duty to Olson; Luehrs' actions were unauthorized by the durable power of attorney. Luehrs' second assignment of error is without merit.

### STANDING

 Luehrs' final argument is that Crosby did not have standing to sue, because he had no right to the money in the POD accounts before Olson's death. Standing is the legal or equitable right, title, or interest in the subject matter of the controversy which entitles a party to invoke the jurisdiction of the court. *Hradecky v. State*, 264 Neb. 771, 652 N.W.2d 277 (2002). The purpose of an inquiry as to standing is to determine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Id.* In order to have standing, a litigant must assert the litigant's own legal rights and interests and cannot rest his or her claim on the legal rights or interests of third parties. *Id.* The litigant must have some legal or equitable right, title, or interest in the subject of the controversy. See *Chambers v. Lautenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002).

Obviously, since we have concluded that Crosby proved a prima facie case for constructive fraud, thus establishing his right to relief, it would be absurd to conclude that Crosby had no standing to sue. Cf. *Brooks v. Bank of Wisconsin Dells*, 161 Wis. 2d 39, 467 N.W.2d 187 (Wis. App. 1991). Were we to conclude otherwise, we would effectively abrogate the doctrine of constructive fraud. The nature of an action for constructive fraud is

that a plaintiff, who has lost the legal right to property, is claiming that he or she has been deprived of that right by the breach of a fiduciary duty. The possession of a legal right cannot be a predicate to a suit intended to recover for the loss of that same right. By pleading an equitable cause of action and proving his allegations, Crosby also proved that he had an equitable right to the subject of the controversy. See *Chambers, supra.* We reject Luehrs' final assignment of error.

## CONCLUSION

Luehrs engaged in impermissible self-dealing when he transferred money out of the POD accounts, because the ultimate effect of the transfers was to increase the amount of Luehrs' inheritance. This self-dealing was neither authorized by the durable power of attorney, nor justified by any colorable reason that the transfers were in Olson's best interest. The district court correctly concluded that Crosby was entitled to the money that was, pursuant to stipulation, set aside in escrow. The judgment of the district court is affirmed.

AFFIRMED.