Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/17/2023 09:03 AM CST

- 535 -

**Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports**
IN RE GUARDIANSHIP OF ELIZABETH C.
Cite as 31 Neb. App. 535

In re Guardianship of Elizabeth C.,
an incapacitated person.
Valorie S., appellant, v.
Malachi S., appellee.
___ N.W.2d ___

Filed January 17, 2023.    No. A-22-130.

1. **Jurisdiction: Statutes.** Subject matter jurisdiction and statutory interpretation present questions of law.
2. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.
3. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
4. **Decedents' Estates: Judgments: Appeal and Error.** In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
5. **Decedents' Estates: Equity: Appeal and Error.** Equity questions arising in appeals involving the Nebraska Probate Code are reviewed de novo.
6. **Rules of Evidence: Appeal and Error.** The admission of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court.
7. **Jurisdiction: Words and Phrases.** Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.

- 536 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF ELIZABETH C.
Cite as 31 Neb. App. 535

8. **Courts: Jurisdiction: Equity.** Although county courts lack general equity jurisdiction, they may apply equitable principles to matters that are within their exclusive jurisdiction.
9. **Courts: Agency.** The county courts have authority to construe a power of attorney or review the agent's conduct and grant appropriate relief.

Appeal from the County Court for Douglas County: Darryl R. Lowe, Judge. Affirmed.

LaShawn D. Young, of Young & Young Attorneys at Law, for appellant.

Christian R. Blunk, of Harris & Associates, P.C., L.L.O., for appellee.

Moore, Riedmann, and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

A guardian and conservator appeals the order of the county court for Douglas County confirming the transfer of real estate to a ward's attorney in fact under a durable power of attorney (POA). The guardian and conservator contests the court's jurisdiction, the sufficiency of the evidence, and the court's receipt of the ward's will into evidence. We affirm.

## BACKGROUND

Elizabeth C. is the mother of six children: Valorie S., John S., Malachi S., Mark S., Christopher S., and Tealauna S. Elizabeth owned two houses in Omaha, Nebraska: one located on North 48th Street (the 48th Street house) and the other located on Miami Street (the Miami Street house).

In September 2019, Malachi took Elizabeth to an emergency room. At the time, she was 78 years of age. Her blood pressure was "way off the charts," and she suffered a seizure at the emergency room. Elizabeth was admitted to the hospital through the stroke neurology department. Upon discharge,

- 537 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF ELIZABETH C.
Cite as 31 Neb. App. 535

Elizabeth's diagnoses included cerebrovascular accident, hypertension, hypercholesterolemia, and vascular dementia without behavioral disturbance.

Prior to Elizabeth's release from the hospital, a "notary" from the hospital advised Malachi that Elizabeth needed a POA so someone could take care of her bills and anything else, in the event "she took a turn for the worse." Elizabeth executed a durable POA appointing Malachi as her attorney in fact on October 14, 2019. Elizabeth was then released to a rehabilitation facility. At that time, she was responsive and able to understand what was going on with her medical treatment.

Malachi was advised by the doctors in December 2019 that Elizabeth had advanced vascular dementia. Elizabeth was discharged from the rehabilitation facility in February 2020, because Medicare stopped paying her bill due to her lack of progress. An employee of the rehabilitation facility's business office advised Malachi that they needed Elizabeth's financial information to help Malachi decide where to take Elizabeth, because she was unable to return home. They asked about her bank statements and the number of cars and houses she owned. They advised him that if Elizabeth had a will, then he should transfer anything she had in her name pursuant to the provisions of the will. He was told the same thing by other long-term care facilities that they considered, as well as by the facility to which he ultimately transferred her.

Pursuant to the advice Malachi was receiving, he obtained a copy of Elizabeth's will and distributed the real estate and vehicles according to its terms and made several of the cash distributions. Included in the will was a devise to Malachi of the 48th Street house, so he deeded it to himself. In June 2020, Valorie filed an application for appointment of a temporary and permanent guardian and conservator for Elizabeth and nominated herself to serve in those roles. She was appointed in a temporary position, and Malachi initially filed a motion to terminate the temporary

- 538 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF ELIZABETH C.
Cite as 31 Neb. App. 535

guardianship and conservatorship, but later withdrew it. Valorie was appointed Elizabeth's permanent guardian and conservator on March 8, 2021.

Following Valorie's appointment, Malachi filed a motion to confirm the transfer of the 48th Street house. Valorie objected, and a contested hearing was held on January 31, 2022. In addition to the facts set forth above, the following evidence was adduced.

According to John, Malachi was the child Elizabeth trusted with her finances and was named as her personal representative in her will. John had conversations with Elizabeth regarding her estate plan and was aware that she was devising the 48th Street house to Malachi, the Miami Street house to Christopher, and several vehicles to the other sons. Valorie was not designated as a devisee to any of the houses or vehicles. John explained that Elizabeth and Valorie had had a "falling out" in about 2016 that involved Elizabeth's refusal to allow Valorie to live in the Miami Street house. John felt that prior to Elizabeth's hospitalization in September 2019, Elizabeth had the mental capacity to make her own decisions.

Malachi resides in the 48th Street house. He has been disabled since 2013 due to progressive glaucoma. He has talked to or seen his mother every day leading up until the time she was hospitalized. Malachi explained that Elizabeth drafted a will and had Malachi's wife type it. The will was received into evidence over Valorie's foundational objection. It indicates on its cover that it was made March 12, 2018, and executed on April 5.

After being advised by the long-term care facilities to transfer his mother's assets, Malachi secured his mother's will, which she kept under her television stand. He made most of the distributions contained in the will, but first, he sought counsel from the care facilities to make sure he was doing things properly. He deeded the 48th Street house to himself and the Miami Street house to Christopher. He transferred

- 539 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF ELIZABETH C.
Cite as 31 Neb. App. 535

the 48th Street house to himself on January 27, 2020, and the Miami Street house before that.

According to Malachi, he kept all the family members who had a relationship with his mother fully informed. He sent a text message to Valorie the day their mother went to the hospital, but she did not respond to him or any of her siblings. According to Malachi and Christopher, Valorie did not visit while Elizabeth was in the hospital. Valorie confirmed this. Christopher described Valorie as "disown[ing] us" in April 2017.

Malachi testified that he had a phone call with Valorie in the fall of 2019, explaining what the long-term care facilities were telling him. Malachi believed his prior attorney sent all family members a copy of the will in the summer of 2020. According to Malachi, his mother told him to pay off the 48th Street house; that provision is not in the will, but a "Statement of Wishes" attached to the will indicates that funds from Elizabeth's retirement account should be used to pay off the house at the time of her death, if not already accomplished. Malachi made the cash gifts to his brothers as provided in the will, but he did not distribute the cash gifts contained in the will to his sisters or to himself. The will does not contain a cash gift to Christopher, but Malachi stated that Elizabeth told him to make one. He also transferred money from Elizabeth's retirement account to her credit union account after subtracting the amount needed to pay off the mortgage on the 48th Street house.

When questioned why he withdrew his objection to the temporary guardianship and conservatorship, Malachi stated there was an agreement that if Valorie would "not mess with any of the things that were gifted to the family," Malachi would relinquish his POA. After relinquishing his POA and withdrawing his objection, he discovered that Valorie did not agree to that.

Following Elizabeth's hospitalization, Valorie first saw her mother on October 14, 2019. She testified that she did not

- 540 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF ELIZABETH C.
Cite as 31 Neb. App. 535

know her mother was in the hospital and did not find out anything until she was transferred to the rehabilitation facility.

Valorie testified Elizabeth wanted Malachi's POA revoked because Elizabeth was concerned about her finances. She told Valorie that she repeatedly asked Malachi for receipts and statements and that he would not provide them, simply stating everything was being paid and taken care of. Valorie contacted Malachi, John, and John's wife after Elizabeth relayed that information, and they told Valorie the same thing. According to Valorie, Elizabeth was present at the time of the conversations and was very upset over what she heard.

After Valorie discovered that the 48th Street house had been transferred, she contacted Adult Protective Services to begin an investigation into Malachi's actions. Following the investigation, the Nebraska Department of Health and Human Services issued a letter stating that the allegations were unfounded.

Valorie contacted an attorney to draft another POA appointing her as attorney in fact. Valorie presented this POA dated February 24, 2020, to the credit union. The credit union advised Valorie in a letter that it would not accept her POA without further documentation because it conflicted with a prior POA it had on file and because it had contacted Elizabeth, who had no recollection of signing the POA. Valorie did not respond to the letter.

Valorie's attorney suggested that Valorie obtain letters from Elizabeth's physicians indicating Elizabeth's diagnosis and prognosis. After receiving a letter from one of Elizabeth's physicians, Valorie decided it would be in Elizabeth's best interests to seek a guardianship. Since being appointed, Valorie has been taking care of Elizabeth's affairs. In the course of doing so, she became concerned with some of the withdrawals she saw on the accounting provided by Malachi, specifically those described as "Pay her bills/Gifts." Because of her concerns, Valorie objected to Malachi's motion to confirm the transfer of the 48th Street house.

- 541 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF ELIZABETH C.
Cite as 31 Neb. App. 535

The court ruled from the bench that the greater weight of the evidence was with Malachi and confirmed the transfer of the 48th Street house to him. Valorie appeals.

## ASSIGNMENTS OF ERROR

Valorie assigns that (1) the court lacked jurisdiction to approve the transfer of the real property; (2) the evidence was insufficient to determine the transfer of the property was proper and without self-dealing; and (3) the court erred in allowing Elizabeth's will into evidence without proper foundation, prejudicing Valorie.

## STANDARD OF REVIEW

[1-3] Subject matter jurisdiction and statutory interpretation present questions of law. *In re Estate of Adelung*, 306 Neb. 646, 947 N.W.2d 269 (2020). A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *Id.* An appellate court independently reviews questions of law decided by a lower court. *Id.*

[4,5] In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* Equity questions arising in appeals involving the Nebraska Probate Code are reviewed de novo. *In re Estate of Adelung, supra*.

[6] The admission of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Prime Home Care v. Pathways to Compassion*, 283 Neb. 77, 809 N.W.2d 751 (2012).

- 542 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF ELIZABETH C.
Cite as 31 Neb. App. 535

## ANALYSIS

*Subject Matter Jurisdiction.*

Valorie contends that the county court lacked jurisdiction to address Malachi's motion because the recovery sought was akin to a request to quiet title. And because a quiet title action lies in equity and the county court does not possess equity jurisdiction, she concludes the court was without jurisdiction. We disagree.

[7] Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. *In re Estate of Adelung, supra.*

County courts maintain exclusive original jurisdiction of guardianship and conservatorship matters. Neb. Rev. Stat. § 24-517(2) and (3) (Cum. Supp. 2022). They also have concurrent jurisdiction with the district court in any matter relating to a POA and the action or inaction of any agent acting under a POA. See, § 24-517(13); *In re Estate of Adelung, supra.*

After Valorie filed her application for guardianship and conservatorship of her mother in which she asserted an Adult Protective Services investigation into possible financial abuse (following Valorie's report regarding Malachi), Malachi filed a motion to confirm transfer of the home. In the motion, he asserted that at the time of the transfer, he was acting under a durable POA and the transfer was pursuant to his mother's wishes. Valorie objected to the motion on the basis that her mother lacked the capacity to transfer the home to Malachi, and Valorie requested that the court deny the confirmation of the transfer.

Valorie now claims that the county court was without jurisdiction to rule on Malachi's motion to confirm. She relies upon *In re Guardianship of Kath*, No. A-02-1126, 2003 WL 22232019 (Neb. App. Sept. 30, 2003) (not designated for permanent publication), in support of her argument that county courts do not have jurisdiction over matters in equity.

- 543 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF ELIZABETH C.
Cite as 31 Neb. App. 535

However, *In re Guardianship of Kath* involved a motion by a guardian seeking a determination of whether loan documents executed by the ward were legitimate and whether the ward's son had defrauded her. It did not involve actions taken pursuant to a POA. Acknowledging that county courts lacked general equitable jurisdiction, we determined the county court lacked jurisdiction to determine the issues before it. See *id*.

[8] Although county courts lack general equity jurisdiction, they may apply equitable principles to matters that are within their exclusive jurisdiction. *In re Guardianship of Brydon P.*, 286 Neb. 661, 838 N.W.2d 262 (2013). See, also, *In re Estate of Adelung*, 306 Neb. 646, 947 N.W.2d 269 (2020) (recognizing that appellate courts have upheld county courts' application of equitable principles to matters within probate jurisdiction). As stated above, county courts have exclusive jurisdiction in guardianship and conservatorship matters. Moreover, they have concurrent jurisdiction in matters related to the acts taken under a durable POA.

[9] In 2012, the Legislature enacted the Nebraska Uniform Power of Attorney Act, see Neb. Rev. Stat. §§ 30-4001 to 30-4045 (Reissue 2016 & Cum. Supp. 2022) (NUPOAA). See 2012 Neb. Laws, L.B. 1113. The Nebraska Supreme Court explained:

> The NUPOAA conferred concurrent jurisdiction on the county court and the district court "to determine the validity and enforceability of a [POA]." But the NUPOAA also greatly expanded the statutory scope: The Uniform Law Commission "designed the [uniform act] to be comprehensive in nature, addressing the many issues that arose with the increased utilization of the durable [POA]." And among the statutory provisions included in the NUPOAA was one authorizing a "petition [to] a court to construe a [POA] or review the agent's conduct and grant appropriate relief." Thus, when the NUPOAA conferred concurrent jurisdiction "to determine the validity and enforceability of a [POA]," it did so in a much

- 544 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF ELIZABETH C.
Cite as 31 Neb. App. 535

broader context than the same words had conveyed under
the [Uniform Durable Power of Attorney Act].

*In re Estate of Adelung*, 306 Neb. at 661, 947 N.W.2d at 284.

Here, the transfer of the 48th Street house was made pursu-
ant to Malachi's POA. He sought to have that action confirmed
in the guardianship and conservatorship action. Because the
county court has exclusive jurisdiction in probate matters and
concurrent jurisdiction under the NUPOAA to "review the
agent's conduct and grant appropriate relief," see § 30-4016(1),
we determine that the county court had jurisdiction to rule on
the motion pursuant to § 24-517(2), (3), and (13).

*Sufficiency of Evidence.*

Valorie assigns that the evidence was insufficient to deter-
mine that the transfer of the 48th Street house to Malachi was
proper. In her objection to the motion to confirm the transfer of
the house, Valorie asserted that due to Elizabeth's "5-year his-
tory of gradually progressive cognitive and functional decline,"
she "did not have the capacity to transfer the home." Because
the transfer was made pursuant to Elizabeth's will and POA,
we turn first to Elizabeth's capacity during the time period
when those documents were executed.

The evidence reveals that Elizabeth executed a will in 2018
which provided for the devise of the 48th Street house to
Malachi. Malachi testified that Elizabeth drew the will up her-
self and had his wife type it. Elizabeth then took it to the credit
union to have it properly executed in April 2018.

On October 14, 2019, Elizabeth signed a POA appointing
Malachi as her attorney in fact. Although the record indicates
that there were conversations with physicians in 2016 regard-
ing potential dementia, the record is sufficient to find that at
the time Elizabeth executed her will and the POA, she had the
mental capacity to do so.

Both Malachi and John testified that Elizabeth was aware
of her actions at the time of her 2019 hospitalization, and the
discharge summary indicates that although she was diagnosed

- 545 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF ELIZABETH C.
Cite as 31 Neb. App. 535

with vascular dementia, it was without behavioral disturbances. Valorie admitted that the first medical opinion she had that her mother was incapacitated was as of May 8, 2020, years after Elizabeth executed her will and months after she signed the 2019 POA. Therefore, the evidence is sufficient to determine that Elizabeth had the mental capacity to execute her will and the 2019 POA.

On appeal, Valorie argues that it was Malachi's burden to prove that he acted in the best interests of their mother and did not use his position to act for his own benefit or that of a third party in a substantially gratuitous transfer. She implies that based upon the transfers of Elizabeth's property, Malachi failed to meet this burden. We disagree.

When it was determined that Elizabeth was unable to return home following her stay at the rehabilitation facility, Malachi was advised by the business office at that facility, as well as the business offices at several other long-term care facilities, that he should distribute his mother's assets pursuant to her will in order to make Elizabeth eligible for Medicaid. Malachi distributed the 48th Street house to himself through a warranty deed, as provided for in the will. The record does not support a finding that Malachi breached any fiduciary duty owed to his mother by doing so. See *Crosby v. Luehrs*, 266 Neb. 827, 669 N.W.2d 635 (2003) (finding constructive trust may be imposed when agent in fact breaches fiduciary duty). Rather, he acted in accordance with the provisions of the will in making the distributions. The fact that he did so prior to Elizabeth's death, without more, does not translate to a determination that he acted contrary to Elizabeth's best interests. In fact, Malachi testified that he transferred the Miami Street house to Christopher prior to deeding himself the 48th Street house because he wanted to make sure Elizabeth was not going to return to the 48th Street house to live.

Based upon our review of the record, we find the evidence sufficient to confirm the transfer of the 48th Street house to Malachi.

- 546 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
IN RE GUARDIANSHIP OF ELIZABETH C.
Cite as 31 Neb. App. 535

*Receiving Will Into Evidence.*

Valorie objected on the basis of foundation when Malachi's attorney offered Elizabeth's will into evidence. The court overruled the objection. On appeal, she argues that "[p]roper foundation needed to be laid and without it, it should not have been received into evidence by the Court. [Valorie] was prejudiced by the Court receiving the will into evidence and using the will as an evidentiary basis to confirm the transfer." Brief for appellant at 10. However, Valorie does not explain what foundation was lacking.

Prior to offering the will into evidence, counsel provided it to Malachi and he identified it as Elizabeth's will. He testified that after Elizabeth went to the hospital, he retrieved her will from her house and put it in the safe. He knew to find it under the television stand because Elizabeth told him that was where it was located. He then relayed conversations he and Elizabeth had about the will's contents before the will was offered and received into evidence. We find no abuse of discretion in the court's receipt of the will into evidence.

## CONCLUSION

We determine that the county court had jurisdiction to address the motion to confirm the transfer of the 48th Street house to Malachi. Further, we find that the evidence was sufficient to confirm the transfer and that there was no error in the court's receipt of Elizabeth's will into evidence. Accordingly, we affirm the order of the county court.

AFFIRMED.