Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/25/2020 08:08 AM CDT

IN RE ESTATE OF MADELINE A. ADELUNG, DECEASED.
LYNDA ADELUNG HEIDEN, PERSONAL REPRESENTATIVE
OF THE ESTATE OF MADELINE A. ADELUNG,
DECEASED, APPELLEE AND CROSS-APPELLANT,
V. KENT A. ADELUNG, APPELLANT
AND CROSS-APPELLEE.

___ N.W.2d ___

Filed July 31, 2020.    No. S-19-705.

1. **Appeal and Error.** To be considered by an appellate court, an alleged
   error must be both specifically assigned and specifically argued in the
   brief of the party asserting the error.
2. **____.** An argument that does little more than restate an assignment of
   error does not support the assignment, and an appellate court will not
   address it.
3. **Jurisdiction: Statutes.** Subject matter jurisdiction and statutory inter-
   pretation present questions of law.
4. **Jurisdiction: Appeal and Error.** A jurisdictional question which does
   not involve a factual dispute is determined by an appellate court as a
   matter of law.
5. **Judgments: Appeal and Error.** An appellate court independently
   reviews questions of law decided by a lower court.
6. **Decedents' Estates: Judgments: Appeal and Error.** In the absence of
   an equity question, an appellate court, reviewing probate matters, exam-
   ines for error appearing on the record made in the county court. When
   reviewing a judgment for errors appearing on the record, the inquiry is
   whether the decision conforms to the law, is supported by competent
   evidence, and is neither arbitrary, capricious, nor unreasonable.
7. **Decedents' Estates: Equity: Appeal and Error.** Equity questions aris-
   ing in appeals involving the Nebraska Probate Code are reviewed
   de novo.

8. **Trial: Appeal and Error.** Cases are determined in an appellate court on the theory upon which they were tried.

9. **Equity: Decedents' Estates: Accounting.** An action for an accounting of estate property is in equity.

10. **Judgments: Evidence: Appeal and Error.** Despite de novo review, when credible evidence is in conflict on material issues of fact, the appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.

11. **Jurisdiction: Words and Phrases.** Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.

12. **Actions: Jurisdiction.** Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.

13. **Decedents' Estates: Courts: Jurisdiction.** Generally, the county court has exclusive original jurisdiction over all matters relating to decedents' estates.

14. **Decedents' Estates: Courts: Jurisdiction: Equity.** The county courts, in exercising exclusive original jurisdiction over estates, may apply equitable principles to matters within probate jurisdiction.

15. **Constitutional Law: Decedents' Estates: Courts: Jurisdiction.** The county court's jurisdiction under Neb. Rev. Stat. §§ 24-517(1) (Cum. Supp. 2018) and 30-2211 (Reissue 2016) cannot be exclusive as to matters within the district court's chancery and common law jurisdiction conferred by Neb. Const. art. V, § 9.

16. **Constitutional Law: Courts: Jurisdiction.** The grant of jurisdiction to the district court under Neb. Const. art. V, § 9, while original, is not exclusive.

17. **Courts: Jurisdiction: Words and Phrases.** Under the doctrine of jurisdictional priority, when different state courts have concurrent original jurisdiction over the same subject matter, basic principles of judicial administration require that the first court to acquire jurisdiction should retain it to the exclusion of another court.

18. **Statutes: Legislature: Intent.** A collection of statutes pertaining to a single subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

19. **Statutes.** A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

20. **Statutes: Appeal and Error.** An appellate court will not resort to interpretation to ascertain the meaning of statutory words that are plain, direct, and unambiguous.

21. **Principal and Agent.** An agent and principal are in a fiduciary relationship such that the agent has an obligation to refrain from doing any harmful act to the principal.

22. ____. The Nebraska Uniform Power of Attorney Act places an agent under a power of attorney in a fiduciary relationship with his or her principal.

23. **Decedents' Estates: Actions: Equity: Courts: Jurisdiction.** In common-law and equity actions relating to decedents' estates, the county court has concurrent original jurisdiction with the district court.

24. **Agency: Trusts.** Neb. Rev. Stat. § 30-4045 (Reissue 2016)—the provision of the Nebraska Uniform Power of Attorney Act governing retroactivity—should be construed similarly to Neb. Rev. Stat. § 30-38,110 (Reissue 2016)—the comparable provision of the Nebraska Uniform Trust Code.

25. **Equity: Decedents' Estates: Accounting: Limitations of Actions.** The statute of limitations for an action in equity for an accounting of estate property is 4 years.

26. **Limitations of Actions: Words and Phrases.** The accrual of a cause of action means the right to maintain and institute a suit, and whenever one person may sue another, a cause of action has accrued and the statute begins to run, but not until that time. So whether at law or in equity, the cause of action arises when, and only when, the aggrieved party has a right to apply to the proper tribunal for relief.

27. **Principal and Agent.** A power of attorney authorizes another to act as one's agent.

28. **Agency: Words and Phrases.** An agency is a fiduciary relationship resulting from one person's manifested consent that another may act on behalf and subject to the control of the person manifesting such consent and, further, resulting from another's consent to so act.

29. **Principal and Agent.** An agent and principal are in a fiduciary relationship such that the agent has an obligation to refrain from doing any harmful act to the principal, to act solely for the principal's benefit in all matters connected with the agency, and to adhere faithfully to the instructions of the principal, even at the expense of the agent's own interest.

30. ____. An attorney in fact, under the duty of loyalty, always has the obligation to act in the best interest of the principal unless the principal voluntarily consents to the attorney in fact's engaging in an interested transaction after full disclosure.

31. **Principal and Agent: Gifts: Intent.** No gift may be made by an attorney in fact to himself or herself unless the power to make such a gift is expressly granted in the instrument and there is shown a clear intent on the part of the principal to make such a gift.

32. **Principal and Agent: Gifts: Fraud.** The basic policy concern underlying the law that forbids self-dealing is not linked to any duty an agent may have to third parties, but is primarily addressed to the potential for fraud that exists when an agent acting pursuant to a durable power of attorney has the power to make gifts, especially after the principal becomes incapacitated.

33. **Agency.** Powers of attorney are by necessity strictly construed, and broad encompassing grants of power are to be discounted.

34. **Landlord and Tenant: Property.** A life tenant is entitled to and owns by absolute title everything in the nature of income, profit, and gain realized or accrued from the property during his or her tenancy.

35. **Agency: Intent.** An agency relationship may be implied from the words and conduct of the parties and the circumstances of the case evidencing an intention to create the relationship irrespective of the words or terminology used by the parties to characterize or describe their relationship.

36. **Principal and Agent: Property.** An agent has a duty to account to his or her principal for all property or funds which he or she has received or paid out on behalf of the principal.

37. **Laches.** The defense of laches is not favored in Nebraska.

38. \_\_\_\_. Laches occurs only if a litigant has been guilty of inexcusable neglect in enforcing a right and his or her adversary has suffered prejudice.

39. **Laches: Equity.** Laches does not result from the mere passage of time, but because during the lapse of time, circumstances changed such that to enforce the claim would work inequitably to the disadvantage or prejudice of another.

40. **Agency: Gifts.** The rule of strict construction regarding authority under a power of attorney to make gifts continues under the Nebraska Uniform Power of Attorney Act.

41. \_\_\_\_: \_\_\_\_. The Nebraska Uniform Power of Attorney Act limits gifts made via a general grant of authority.

42. **Principal and Agent: Liability.** An exoneration clause in a power of attorney will not relieve an agent of liability if the clause was inserted as a result of an abuse of a confidential or fiduciary relationship with the principal.

43. **Appeal and Error.** Appellate courts do not consider arguments and theories raised for the first time on appeal.

Appeal from the County Court for Buffalo County: Gerald R. Jorgensen, Jr., Judge. Affirmed as modified, and cause remanded with directions.

Jared J. Krejci, of Smith, Johnson, Baack, Placzek, Allen, Connick & Hansen, for appellant.

Blake E. Johnson and Paul A. Lembrick, of Bruning Law Group, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

Within a county court probate case, the personal representative filed an action against the decedent's son to recover money he received in two ways: (1) collecting and retaining farm rents receivable under the decedent's life estate and (2) writing checks to himself and others under a power of attorney from the decedent. The county court entered a judgment, from which the son appeals and the personal representative cross-appeals.

The son challenges the county court's jurisdiction of the matter as one relating to a decedent's estate and relating to the action of an agent under a power of attorney. We consider statutes governing powers of attorney, including retroactivity. Except as to the son's statute of limitations defense, we find no merit to the appeal or the cross-appeal. We affirm the judgment as modified and remand the cause with directions.

## II. BACKGROUND

### 1. Decedent's Family

Madeline A. Adelung (the decedent) and her husband lived on a family farm outside Amherst, Nebraska. Her husband owned and operated the farm during his lifetime. They had three children: Sheralee Adelung Boe, Lynda Adelung Heiden, and Kent A. Adelung (Adelung). Adelung remained in the

area, but in the mid-to-late 1970's, Boe moved to Madison, Nebraska, and Heiden moved to Lincoln, Nebraska.

The decedent's husband died in 1987. He left a life estate in the farm property to the decedent with the remainder interest going to Adelung. The decedent wished to remain on the family farm, and from 2008 to 2010, Adelung stayed at the farm with the decedent nearly every night. In August 2010, the decedent was moved to an assisted living facility. She died on October 21, 2014.

## 2. Farm Income

After Adelung graduated from high school in 1975, he farmed with his father. They had a 50-50 partnership, each being responsible for half of the expenses and being entitled to half of the revenue. Adelung continued to farm the land after his father's death, and the decedent initially charged him half of the standard rental rate.

In 2000, Adelung began to explore a career change. In return for Adelung's care and companionship so that the decedent could remain on the farm, she agreed to pay all of the farm expenses, to not charge Adelung rent, and to let him collect all of the farm income.

Also in approximately 2000, Adelung stopped farming the land in which the decedent held a life estate. He began renting the land to another individual. From 2010 to 2014, roughly half of the rent Adelung received was from land owned by the decedent. Adelung testified that he was essentially managing the farm during that time and that the value of farm management would be around 10 percent of the rental income.

## 3. Gifts

In July 2008, the decedent executed a power of attorney conferring "[p]lenary [p]ower." The document named Adelung and Heiden as the decedent's agents. It contained an "additional provision" on gifting which stated:

> **Gifting.** To carry out on my behalf any plan or pattern of gifting to my issue, including gifting to my Agent,

which had apparently been established or clearly contemplated by myself. In determining whether to initiate or continue any such gifting plan, my Agent shall give consideration to the size of my estate in light of what might reasonably be anticipated as my future needs and the potential federal estate taxes which may be due upon my death in order that such taxes may be lessened or eliminated. If a gifting plan has not been initiated by me, my Agent shall have complete discretion to make gifts to my issue, including making gifts to my Agent, after consideration of the foregoing factors. No individual or entity shall have the right, by court action or otherwise, to compel the initiation or continuation of any type of gifting plan by my Agent and no individual or entity shall have any claim or right of reimbursement from my Agent for initiating or continuing a gifting plan or for not initiating or continuing a gifting plan; it being my intention hereby that my Agent shall have absolute discretion and shall bear no liability for any decision made.

The decedent had never engaged in a pattern of gifting prior to July 2008. From that point on, Adelung or his wife received $2,000 checks each month from the decedent, which Adelung alleged to be gifts. Checks were made payable to Adelung's wife for the purpose of staying within the annual federal gift tax exclusion amount for each donee. Adelung testified that the decedent wrote the checks for "quite a while," but that in approximately 2010, she wanted him to write them because she was having trouble with arthritis. No gifts were made to Boe or Heiden. According to Adelung, because the decedent wanted him to continue writing the $2,000 monthly checks after she was placed in assisted living facilities, he did so.

## 4. Probate Proceedings

In January 2015, a little less than 3 months after the decedent's October 2014 death, Heiden filed an application for informal probate of the decedent's will and to be appointed personal representative. Letters of personal representative were

issued as evidence of such appointment. In the decedent's will, Boe, Heiden, and Adelung were named as devisees. After the initial informal testacy and appointment proceeding, the record does not show any other proceeding in the probate case until February 1, 2016.

On that date, Heiden, as personal representative, filed within the probate case a petition for an equitable accounting. She did not pay a filing fee in connection with this petition. She asserts that the county court did not assess a fee.

We summarize the petition's allegations: The decedent was "a vulnerable elderly person." Adelung had a fiduciary or confidential relationship with the decedent, including the relationship of principal and agent by virtue of the power of attorney. From at least 2000, Adelung received rent from the decedent's farmland without sufficient consideration. Adelung and his wife received over $100,000 of the decedent's money without sufficient consideration. Adelung's actions amounted to a conversion of the decedent's property, an unjust enrichment of Adelung, and a breach of fiduciary duties.

Based upon these allegations, Heiden's petition requested that Adelung be ordered to account for that money and to repay the decedent's estate.

In an answer filed in the probate proceeding, Adelung raised a number of affirmative defenses, including the statute of limitations, the decedent's ratification or consent during her lifetime, laches, and res judicata.

## 5. County Court's Decision

At some point, according to the county court's judgment (styled as a journal entry and order), Adelung moved to dismiss the action for lack of subject matter jurisdiction. This motion is not in our record. In the judgment, the court characterized the proceeding as an "equity action." The court determined that it had subject matter jurisdiction, noting that it had broad powers in probate matters and that Adelung was an interested party and heir. Based on this reasoning, the court overruled the motion. The court then turned to the merits.

The court found that from 2000 to August 2010, "Adelung was benefiting from the farm rents, was foregoing [sic] other career opportunities and [the decedent] was benefitting in the form of care, companionship and being allowed to remain at home." However, the court determined that farm rental income between August 2010—when the decedent moved into assisted living—and the decedent's death was improperly collected by Adelung. The court reasoned that during that time, "all of the benefits were flowing to . . . Adelung to the detriment of [the decedent's] financial position" and "Adelung was not actively working the farm, simply collecting the rents."

The court determined that the $2,000 monthly checks were not gifts. Instead, the court stated that the checks were compensation for the care and companionship Adelung and his wife provided to the decedent. The court found that 38 monthly $2,000 checks from August 2010 until late 2013, totaling $76,000, were improperly obtained by Adelung.

The court entered judgment against Adelung. It determined that the value of the improperly obtained farm income was $114,550 and that together with the improper gifts obtained by Adelung, he must reimburse the estate $190,550. The judgment made no reference to either the statute of limitations or laches.

Adelung filed a timely appeal, and Heiden cross-appealed. We granted Adelung's petition to bypass review by the Nebraska Court of Appeals. Adelung also filed a motion asking this court to take judicial notice of the legislative history of 2015 Neb. Laws, L.B. 314, and of a printout from Nebraska's online trial court case management system, known as JUSTICE, showing the filing fees paid to the county court. In resolving this appeal, we have taken notice to the extent appropriate to do so.

## III. ASSIGNMENTS OF ERROR

Adelung assigns 10 errors. He claims that the county court erred in determining that it had equitable subject matter jurisdiction over Heiden's claims and in determining that it had subject matter jurisdiction over Heiden's petition despite her

failure to pay a filing fee or obtain leave to file in forma pauperis. He also alleges the county court erred in (1) failing to apply the statute of limitations to transactions which occurred before February 2012, (2) finding that he was liable for the farm rent voluntarily given to him by the decedent, (3) failing to apply the provisions of the Nebraska Uniform Power of Attorney Act (NUPOAA),[1] (4) failing to determine that Adelung was not liable due to the doctrine of consent, (5) failing to determine that Adelung was not liable due to the doctrine of exoneration, (6) failing to determine that Adelung was not liable due to the doctrine of laches, (7) making factual findings relating to the exoneration clause in the decedent's power of attorney and to the extent that it determined the decedent lacked mental capacity other than the time shortly before her death, and (8) entering judgment against Adelung.

On cross-appeal, Heiden alleges the county court erred in failing to require that all funds transferred from the decedent's account from June 2008 to September 2013 and all farm rental income be returned to the estate.

[1,2] In a few instances, Adelung's brief fails to comply with one or both of two appellate rules. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.[2] Similarly, an argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.[3] We do not consider those assignments or arguments.

## IV. STANDARD OF REVIEW

[3-5] Subject matter jurisdiction and statutory interpretation present questions of law.[4] A jurisdictional question which does not involve a factual dispute is determined by an appellate

---

[1] Neb. Rev. Stat. §§ 30-4001 to 30-4045 (Reissue 2016 & Supp. 2019).

[2] *Adair Holdings v. Johnson*, 304 Neb. 720, 936 N.W.2d 517 (2020).

[3] *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015).

[4] *Christine W. v. Trevor W.*, 303 Neb. 245, 928 N.W.2d 398 (2019).

court as a matter of law.[5] An appellate court independently reviews questions of law decided by a lower court.[6]

[6,7] In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[7] Equity questions arising in appeals involving the Nebraska Probate Code[8] are reviewed de novo.[9]

## V. ANALYSIS

### 1. Type of Action

The county court characterized the proceeding below as an "equity action," that is, a suit in equity. We do not read the parties' briefs as challenging that classification. But two allegations were inconsistent with a suit in equity. First, an action for conversion sounds in law.[10] Second, a claim for unjust enrichment is a quasi-contract claim for restitution.[11] And we have held that any quasi-contract claim for restitution is an action at law.[12]

[8] Because the county court treated the matter as an equity action, it necessarily tried the case on some basis other than conversion or unjust enrichment. Cases are determined in an

---

[5] *Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020).

[6] *Hochstein v. Cedar Cty. Bd. of Adjustment*, 305 Neb. 321, 940 N.W.2d 251 (2020).

[7] *In re Estate of Radford*, 304 Neb. 205, 933 N.W.2d 595 (2019).

[8] Neb. Rev. Stat. §§ 30-401 to 30-406, 30-701 to 30-713, 30-2201 to 30-2902, 30-3901 to 30-3923, 30-4001 to 30-4045, 30-4101 to 30-4118, and 30-4201 to 30-4210 (Reissue 2016, Cum. Supp. 2018 & Supp. 2019).

[9] *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012).

[10] *Gallner v. Larson*, 291 Neb. 205, 865 N.W.2d 95 (2015).

[11] See *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011).

[12] See *id.*

appellate court on the theory upon which they were tried.[13] Thus, we will determine the appeal based on the theory utilized in the court below.

[9,10] Heiden sought to recover property that Adelung received but which Heiden asserted belonged to the decedent's estate. In other words, she sought an accounting. An action for an accounting of estate property is in equity.[14] Because the action sounded in equity, we must review it accordingly. This requires us to review the county court's judgment de novo on the record. Despite de novo review, when credible evidence is in conflict on material issues of fact, the appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.[15]

## 2. Jurisdiction

Adelung presents two arguments challenging the county court's jurisdiction of this proceeding. One is based on the nature of Heiden's claims. This has two components: the extent of the county court's probate jurisdiction and its jurisdiction over powers of attorney. The other stems from the court's failure to charge and collect a filing fee. In both arguments, he claims the court lacked subject matter jurisdiction. Before turning to his specific arguments, we recall general principles, change in probate jurisdiction, and the development of jurisdiction regarding powers of attorney.

### (a) General Principles

[11,12] Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with

---

[13] *Robison v. Madsen*, 246 Neb. 22, 516 N.W.2d 594 (1994).

[14] *Cheloha v. Cheloha*, 255 Neb. 32, 582 N.W.2d 291 (1998), *disapproved on other grounds, Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019).

[15] *Mock v. Neumeister*, 296 Neb. 376, 892 N.W.2d 569 (2017).

the general subject matter involved.[16] Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.[17]

(b) Probate Jurisdiction

[13] We have said that generally, the county court has exclusive original jurisdiction over all matters relating to decedents' estates.[18] But this is not as simple as it sounds.

Adelung directs us to *Lambie v. Stahl*,[19] where in 1965 this court recognized that a title dispute between an estate representative and a third person with an adverse claim was "ordinarily decided in another forum,"[20] that is, not in the probate court. There, we said, "Jurisdiction to enforce a right of retainer does not imply jurisdiction to render a personal judgment."[21] In a later case, describing the legal regime prior to 1970, we explained, "At least since 1879, the county court has had exclusive original jurisdiction in all matters of probate and the settlement of decedents' estates, and the District Court has had exclusive original jurisdiction in equity cases."[22] Thus, at the time of the *Lambie* decision, a county court simply had no jurisdiction in equity cases.

[14-17] Shortly after *Lambie*, however, that changed, as we explained in a 1985 case where we articulated three important concepts:[23] First, the county courts, in exercising exclusive original jurisdiction over estates, may apply equitable principles

---

[16] *Christine W. v. Trevor W., supra* note 4.

[17] *Id.*

[18] *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018). See Neb. Rev. Stat. § 24-517(1) (Cum. Supp. 2018). See, also, § 30-2211(a).

[19] *Lambie v. Stahl*, 178 Neb. 506, 134 N.W.2d 86 (1965).

[20] *Id*. at 507, 134 N.W.2d at 87.

[21] *Id*. at 508, 134 N.W.2d at 87.

[22] *In re Estate of Kentopp. Kentopp v. Kentopp*, 206 Neb. 776, 785, 295 N.W.2d 275, 280 (1980).

[23] See *In re Estate of Steppuhn*, 221 Neb. 329, 377 N.W.2d 83 (1985).

to matters within probate jurisdiction.[24] Second, applying the constitutional avoidance canon, we determined that the county court's jurisdiction under §§ 24-517(1) and 30-2211 cannot be "exclusive"[25] as to matters within the district court's "chancery and common law jurisdiction" conferred by Neb. Const. art. V, § 9. Finally, we acknowledged that the grant of jurisdiction to the district court under article V, § 9, while original, is not exclusive.[26] Under the doctrine of jurisdictional priority, when different state courts have concurrent original jurisdiction over the same subject matter, basic principles of judicial administration require that the first court to acquire jurisdiction should retain it to the exclusion of another court.[27]

In the modern era, we have upheld a county court's jurisdiction over matters related to a decedent's estate in numerous situations. These include partitioning real estate belonging to a decedent,[28] adjudicating a claim against a decedent's estate based upon an alleged oral contract to execute a will leaving the decedent's business to the claimant employee,[29] determining the title to personal property possessed by the decedent where ownership was asserted by another,[30] resolving a claim by a decedent wife's personal representative of a share of ownership of bearer bonds allegedly owned as tenants in common as against a decedent husband's personal representative,[31] and recovering an improper distribution from a pending estate[32] pursuant to a probate statute.[33] In each instance,

---

[24] *Id.*

[25] See *id.* at 332, 377 N.W.2d at 85.

[26] *Id.*

[27] *Brinkman v. Brinkman*, 302 Neb. 315, 923 N.W.2d 380 (2019).

[28] See *In re Estate of Kentopp. Kentopp v. Kentopp, supra* note 22.

[29] See *In re Estate of Layton*, 207 Neb. 646, 300 N.W.2d 802 (1981).

[30] See *In re Estate of Severns*, 217 Neb. 803, 352 N.W.2d 865 (1984).

[31] See *In re Estate of Steppuhn, supra* note 23.

[32] See *Ptak v. Swanson*, 271 Neb. 57, 709 N.W.2d 337 (2006).

[33] See § 30-24,106.

jurisdiction arose from the county court's jurisdiction under § 24-517(1).

### (c) Powers of Attorney

Section 24-517(13) confers upon the county court "[c]oncurrent original jurisdiction with the district court in any matter relating to a power of attorney and the action or inaction of any agent acting under a power of attorney." Adelung makes a complex argument, but before considering it, some history is helpful.

At the time of the 2008 power of attorney, powers of attorney were governed by the Uniform Durable Power of Attorney Act (UDPAA)[34] and by the common law.[35] The provisions of the UDPAA were quite limited, focused mainly on validating a durable power of attorney—"thereby trumping the common law agency principle that the authority of the agent ceased upon the disability of the principal."[36] The sections of the UDPAA were, in turn, included in the definition of the Nebraska Probate Code.[37] In the UDPAA, the only statute conferring jurisdiction to a county court stated, "The county court and the district court of the principal's domicile shall have concurrent jurisdiction to determine the validity and enforceability of a durable power of attorney."[38] But the UDPAA lacked any provision for judicial review of an agent's conduct or any authorization for an agent to make gifts. Thus, in 2008, the only forum for a challenge to an agent's conduct was the district court.[39]

---

[34] See Neb. Rev. Stat. §§ 30-2664 to 30-2672 (Reissue 2008).

[35] See Ronald R. Volkmer, *Nebraska's Real Property Transfer on Death Act and Power of Attorney Act: A New Era Begins*, 46 Creighton L. Rev. 499 (2013).

[36] *Id*. at 506.

[37] See § 30-2201 (Reissue 2008).

[38] § 30-2671.

[39] See, *Archbold v. Reifenrath*, 274 Neb. 894, 744 N.W.2d 701 (2008); *Crosby v. Luehrs*, 266 Neb. 827, 669 N.W.2d 635 (2003).

In 2012, the Legislature repealed the UDPAA and enacted the NUPOAA.[40] The 2012 legislation also repealed the Nebraska Short Form Act,[41] which provided numerous definitions that could be included in powers of attorney by reference to "[s]hort form expression[s]."[42] All of the sections of the NUPOAA were included within the scope of the Nebraska Probate Code.[43]

The NUPOAA conferred concurrent jurisdiction on the county court and the district court "to determine the validity and enforceability of a power of attorney."[44] But the NUPOAA also greatly expanded the statutory scope: The Uniform Law Commission "designed the [uniform act] to be comprehensive in nature, addressing the many issues that arose with the increased utilization of the durable power of attorney."[45] And among the statutory provisions included in the NUPOAA was one authorizing a "petition [to] a court to construe a power of attorney or review the agent's conduct and grant appropriate relief."[46] Thus, when the NUPOAA conferred concurrent jurisdiction "to determine the validity and enforceability of a power of attorney,"[47] it did so in a much broader context than the same words had conveyed under the UDPAA.[48]

At the time the Legislature adopted the NUPOAA, it made no corresponding change to § 4-517. The Legislature remedied this omission in 2015,[49] adding the above-quoted § 24-517(13). With this understanding, we turn to Adelung's jurisdictional arguments.

---

[40] See 2012 Neb. Laws, L.B. 1113.

[41] See Neb. Rev. Stat. §§ 49-1501 to 49-1562 (Reissue 2010).

[42] See § 49-1504(5).

[43] See § 30-2201.

[44] § 30-4006(1).

[45] Volkmer, *supra* note 35 at 506.

[46] § 30-4016(1).

[47] § 30-4006(1).

[48] See § 30-2671.

[49] See 2015 Neb. Laws, L.B. 314.

### (d) Adelung's Jurisdictional Arguments

#### *(i) Power of Attorney*

Adelung posits that the 2015 legislation adding § 24-517(13) changed the county court's jurisdiction contrary to the Legislature's purpose. He asserts that the 2012 grant of jurisdiction in § 30-4006(1) is "limited to determining 'the validity and enforceability of a power of attorney.'"[50] Reading the 2015 addition of § 24-517(13) as recognizing jurisdiction "in any matter relating to a power of attorney and the action or inaction of any agent acting under a power of attorney"[51] would, he asserts, render § 30-4006(1) superfluous.

[18,19] Adelung relies on two well-established principles of law. First, a collection of statutes pertaining to a single subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[52] Second, a court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[53]

Next, asserting that the difference between § 24-517(13) and § 30-4006(1) creates ambiguity, Adelung relies on legislative history to show that L.B. 314—which added § 24-517(13)— was not intended to make any substantive changes to county court jurisdiction. He first notes the introducer's statement that the purpose of L.B. 314 was "to clearly define the jurisdiction of the County Court in one statutory section."[54] He

---

[50] Brief for appellant at 27 (quoting § 30-4006(1)).

[51] § 24-517(13).

[52] *Shelter Mut. Ins. Co. v. Freudenberg*, 304 Neb. 1015, 938 N.W.2d 92 (2020).

[53] *Id*.

[54] Introducer's Statement of Intent, L.B. 314, Judiciary Committee, 104th Leg., 1st Sess. (Jan. 29, 2015).

also emphasizes the introducer's testimony to the Judiciary Committee that the amendment "clarifies that the jurisdiction is not changing but only becoming clearly stated. [The amendment] does not change the jurisdiction of any court."[55]

We do not agree that the legislative history is as definitive as Adelung claims. The committee statement asserted that the amendment would "establish the county court's concurrent original jurisdiction with the district court in a number of areas, including any matter relating to a power of attorney and the inaction of any agent acting under a power of attorney."[56]

[20] But more important, in the absence of ambiguity, we do not consult legislative history. An appellate court will not resort to interpretation to ascertain the meaning of statutory words that are plain, direct, and unambiguous.[57] And we need not do so here.

The premise of Adelung's ambiguity argument is flawed. He compares only §§ 24-517(13) and 30-4006(1) and reads the latter in isolation. But when § 24-517(13) is read in the context of *all* of the NUPOAA, § 30-4006(1) cannot be described as superfluous. The words "validity and enforceability" therein must be read together with the other sections governing virtually every aspect of a power of attorney. In light of the broad scope of the NUPOAA and its "comprehensive . . . nature,"[58] the plain language of these sections becomes consistent, harmonious, and sensible. And they certainly confer county court jurisdiction to "construe a power of attorney or review the agent's conduct and grant appropriate relief."[59]

---

[55] Judiciary Committee Hearing, L.B. 314, 104th Leg., 1st Sess. 11 (Jan. 29, 2015).

[56] Committee Statement, L.B. 314, Judiciary Committee, 104th Leg., 1st Sess. (Jan. 29, 2015).

[57] *Shelter Mut. Ins. Co. v. Freudenburg, supra* note 52.

[58] Volkmer, *supra* note 35 at 506.

[59] § 30-4016(1).

### (ii) Probate Jurisdiction

Adelung's arguments regarding the probate court's jurisdiction of Heiden's suit for an equitable accounting fare no better. Several statutory provisions apply.

First, with certain specified exceptions, § 24-517(1) confers jurisdiction of "all matters relating to decedents' estates" to the county court.

Second, contrary to positions taken at oral argument, statutory authority for related proceedings appears in the Nebraska Probate Code. Section 30-2405 authorizes interested persons to "petition the court for orders in formal proceedings within the court's jurisdiction *including but not limited to those described in this article*." (Emphasis supplied.) This section also confers upon the county court "jurisdiction of all proceedings to determine how decedents' estates subject to the laws of this state are to be administered, expended and distributed."[60] Section 30-2464(c) granted Heiden, as personal representative, the "same standing to sue and be sued in the courts of this state . . . as his or her decedent had immediately prior to death." Before the decedent's death, she had the right to seek a review of the agent's conduct and appropriate relief.[61] And § 30-2470 empowered the personal representative to "maintain an action to recover possession of property or to determine the title thereto."

Third, § 30-2476(22) authorized Heiden to "prosecute or defend claims or proceedings in any jurisdiction for the protection of the estate." She certainly could have commenced this action in the district court, which had concurrent jurisdiction. But at that point, the district court's jurisdiction had not been invoked.

[21,22] These statutory provisions conferred ample authority to pursue the equitable action against Adelung. He was a devisee of the estate. As the decedent's agent pursuant to the power of attorney, he stood in a fiduciary relationship with

---

[60] § 30-2405.

[61] See § 30-4016(1).

the decedent. As we said prior to enactment of the NUPOAA, an agent and principal are in a fiduciary relationship such that the agent has an obligation to refrain from doing any harmful act to the principal.[62] The NUPOAA places an agent under a power of attorney in a fiduciary relationship with his or her principal.[63]

To escape the county court's statutory jurisdiction over all matters relating to decedents' estates, Adelung relies on several cases; but none supports his argument. One was merely an example of a common-law or equitable action initiated in a district court.[64] Another pertained to nonprobate property, where the property was transferred by contract and was not testamentary in nature.[65] One addressed the jurisdiction over statutory fair and equitable distribution of tort claim proceeds subject to subrogation for workers' compensation benefits paid by or on behalf of an employer.[66] One simply had no relationship to a decedent.[67] And one, which also had no relationship to a decedent's estate, attempted to use a different subsection of § 24-517 to support injunctive relief in a county court action.[68]

[23] In common-law and equity actions relating to decedents' estates, the county court has concurrent original jurisdiction with the district court.[69] This is such a case.

### (iii) Filing Fee

Adelung's jurisdictional argument asserts that because Heiden did not pay a filing fee at the time she filed her petition, the

---

[62] *Crosby v. Luehrs, supra* note 39.

[63] See § 30-4014.

[64] See *Crosby v. Luehrs, supra* note 39.

[65] *Miller v. Janecek*, 210 Neb. 316, 314 N.W.2d 250 (1982).

[66] See *In re Estate of Evertson*, 295 Neb. 301, 889 N.W.2d 73 (2016).

[67] See *Kracl v. Loseke*, 236 Neb. 290, 461 N.W.2d 67 (1990).

[68] See *Iodence v. Potmesil*, 239 Neb. 387, 476 N.W.2d 554 (1991) (addressing § 24-517(4)).

[69] See *In re Estate of Steppuhn, supra* note 23.

court did not acquire jurisdiction. Heiden responds that the court did not charge a filing fee.

Adelung cites no authority for the proposition that a county court does not acquire subject matter jurisdiction of an original proceeding where no filing fee is paid. Certainly, the Legislature understands how to make the payment of a fee jurisdictional.[70]

We find no merit to this argument. Because Adelung addressed the matter purely as an issue of jurisdiction, we express no opinion regarding any fees which may be owed to the county court.[71] Having concluded that all of Adelung's arguments challenging the county court's jurisdiction lack merit, we turn to the substantive issues.

### 3. Power of Attorney: Underlying Questions

Before addressing specific questions regarding Adelung's liability to the decedent's estate, we resolve two issues regarding the 2008 power of attorney.

### (a) General Assignment

Adelung generally assigns that that county court "fail[ed] to apply" several provisions of the NUPOAA, which he lists by section number. We agree with Heiden that the court's decision does not disclose any erroneous recitation from the NUPOAA. We do not address this general assignment further.

### (b) UDPAA and Common Law, or NUPOAA?

Adelung used the 2008 power of attorney both before and after the operative date of the NUPOAA on January 1,

---

[70] See, Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2018) (appeals from district court to Court of Appeals or Supreme Court); Neb. Rev. Stat. § 25-2729 (Cum. Supp. 2018) (appeals from county court to district court).

[71] See Neb. Rev. Stat. § 33-125(1)(a)(ii) (Reissue 2016) (establishing fee for "any other proceeding under the Nebraska Probate Code for which no court fee is established by statute").

2013.[72] Heiden does not dispute that the NUPOAA applies to acts after that date. But the parties disagree whether it applies to actions taken before that date. Adelung argues that it does. We disagree.

One section of the NUPOAA controls its effect, both retroactively and prospectively.[73] Although it contains four subsections, only three apply here. And the dispute focuses on the last one.

The first specifies that unless the act provides otherwise, the NUPOAA applies to a power of attorney created before, on, or after January 1, 2013.[74] By this language, the NUPOAA would apply to the 2008 power of attorney.

The second states that the NUPOAA applies to a judicial proceeding concerning a power of attorney commenced on or after that date.[75] Because Heiden's petition was filed over 3 years after the operative date, the NUPOAA applied to the proceeding.

The last subsection, which the parties dispute, states that "[a]n act done before January 1, 2013, is not affected by the [NUPOAA]."[76] Although § 30-4045 is patterned after a provision of the Uniform Power of Attorney Act,[77] which was adopted in over half of the states, our research did not uncover an examination by any court of language similar to that in § 30-4045(4).

To aid in interpretation, Adelung directs us to the Nebraska Uniform Trust Code (NUTC),[78] which contains a substantially similar statute regarding its retroactive scope.[79] Our case

---

[72] See 2012 Neb. Laws, L.B. 1113, § 48.

[73] See § 30-4045.

[74] § 30-4045(1).

[75] § 30-4045(2).

[76] § 30-4045(4).

[77] See Unif. Power of Attorney Act § 403, 8B U.L.A. 262 (2014).

[78] Neb. Rev. Stat. §§ 30-3801 to 30-38,110 (Reissue 2016 & Cum. Supp. 2018).

[79] See § 30-38,110(a).

law shows that we have applied the NUTC to trusts created prior to the NUTC's enactment.[80] And we have recognized that § 30-38,110(a)(3) required application of the NUTC to judicial proceedings commenced prior to its operative date "except in those instances where we determine that such application would 'substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties,' in which instance, we must apply prior law which has been superseded by the NUTC."[81]

But the NUPOAA equivalent to § 30-38,110(a)(3)— § 30-4045(3)—does not apply here. Section 30-4045(3) governs the treatment of a judicial proceeding commenced *before* January 1, 2013. Here, the proceeding was commenced in 2016, well *after* the NUPOAA's operative date. Instead, this proceeding is governed by § 30-4045(2), which applies the NUPOAA to any judicial proceeding commenced after the NUPOAA's operative date. Thus, the NUPOAA applies to this proceeding.

But that does not end our inquiry. Like the NUPOAA, the NUTC states that "an act done before [the operative date] is not affected by the [NUTC]."[82] And in none of those cases did we apply or interpret the NUTC equivalent to § 30-4045(4). In one case, the equivalent subsection was not mentioned.[83] In another, the law was the same before and after the operative date.[84]

For assistance regarding § 30-4045(4), we turn to a comment to the Uniform Trust Code which provides further guidance regarding retroactivity. It states:

---

[80] See, *In re Margaret Mastny Revocable Trust*, 281 Neb. 188, 794 N.W.2d 700 (2011); *In re Trust Created by Isvik*, 274 Neb. 525, 741 N.W.2d 638 (2007); *In re Trust Created by Inman*, 269 Neb. 376, 693 N.W.2d 514 (2005).

[81] *In re Trust Created by Inman, supra* note 80, 269 Neb. at 381, 693 N.W.2d at 519.

[82] § 30-38,110(a)(4).

[83] See *In re Margaret Mastny Revocable Trust, supra* note 80.

[84] *In re Trust Created by Inman, supra* note 80.

This Code cannot be fully retroactive, however. Constitutional limitations preclude retroactive application of rules of construction to alter property rights under trusts that became irrevocable prior to the effective date. Also, rights already barred by a statute of limitation or rule under former law are not revived by a possibly longer statute or more liberal rule under this Code. *Nor is an act done before the effective date of the Code affected by the Code's enactment.*[85]

[24] We agree with Adelung that § 30-4045—the provision of the NUPOAA governing retroactivity—should be construed similarly to § 30-38,110—the comparable provision of the NUTC. But we disagree with his conclusion. While the NUPOAA applies to this proceeding, the plain language of the statute makes it clear that the NUPOAA does not apply retroactively to acts done before its effective date.[86] To the extent that Adelung's actions as an agent prior to January 1, 2013, may have violated a duty he owed to the decedent under the UDPAA or the common law, applying the NUPOAA would prejudice the decedent's rights. And of course, as personal representative of the decedent's estate, Heiden stands in the decedent's shoes to assert those rights. Because the plain language of the statute makes it clear that the NUPOAA does not apply retroactively to acts done before its effective date, Adelung's use of the power of attorney prior to January 1, 2013, is not governed by the NUPOAA but his actions after that date are.

## 4. Liability Issues

We now turn to the other substantive issues raised by Adelung's appeal and Heiden's cross-appeal. Because of the county court's factual findings, it seems expedient to address the issues in four segments of time.

---

[85] Unif. Trust Code § 1106, comment, 7D U.L.A. 380 (2018) (emphasis supplied).

[86] See § 30-4045(4).

(a) Before August 2010:
Heiden's Cross-Appeal

The county court determined that Adelung was not liable to the estate for either farm rents he collected or checks he wrote to himself or his family members prior to August 2010, when the decedent moved to an assisted living facility. Heiden's cross-appeal, by separate assignments, challenges both of those conclusions.

The court specifically found that the decedent was "very competent and aware of her surroundings and situation" during this period of time. Here, our standard of review becomes critical.

We have reviewed the record de novo. But we are permitted to consider and give weight to the county court's observation of the witnesses and credibility assessments. Having done so, we find no merit to Heiden's cross-appeal. In light of the county court's findings, we are not persuaded that Adelung acted contrary to the decedent's express instructions or in contravention of her wishes. We affirm that portion of the county court's judgment.

(b) August 2010 Through January 2012:
Statute of Limitations

Although Adelung raised the statute of limitations below, the county court's judgment made no mention of it. The parties agree that Neb. Rev. Stat. § 25-207 (Reissue 2016) governs this proceeding. Under that statute, an action must be brought within 4 years.

Adelung argues that Heiden's petition was filed on February 1, 2016; that the decedent "initiated and always knew about the money [Adelung] was receiving"; and that the county court erred in allowing Heiden to recover for transactions which occurred before February 1, 2012.[87] Heiden acknowledges the rules that a statute of limitations begins to run as soon as the claim accrues and that an action in tort accrues as soon

---

[87] Brief for appellant at 28.

as the act or omission occurs.[88] But she argues that in certain categories of cases, the injury is not obvious and the individual is wholly unaware that he or she has suffered an injury or damage.[89] In such cases, it is manifestly unjust for the statute of limitations to begin to run before a claimant could reasonably become aware of the injury. Heiden argues that Adelung "did not present sufficient evidence to demonstrate . . . that [the decedent] was even aware that such money was being taken."[90] We disagree.

[25,26] First, we have already determined that the parties tried this case as an action in equity for an accounting of estate property. The statute of limitations for an action in equity for an accounting of estate property is 4 years.[91] The accrual of a cause of action means the right to maintain and institute a suit, and whenever one person may sue another, a cause of action has accrued and the statute begins to run, but not until that time. So whether at law or in equity, the cause of action arises when, and only when, the aggrieved party has a right to apply to the proper tribunal for relief.[92]

For the sake of completeness, we note that a probate statute prevents a cause of action belonging to a decedent, which had not been barred as of the date of the decedent's death, from being barred sooner than 4 months after death.[93] Because this action was commenced more than 4 months after the decedent's death, that statute does not apply here.

Second, we think the evidence is essentially undisputed that the decedent initiated the practice of Adelung's retaining the farm rents. The decedent initially signed the checks for gifts to Adelung and his family members. Coupled with the county

---

[88] See *Alston v. Hormel Foods Corp.*, 273 Neb. 422, 730 N.W.2d 376 (2007).

[89] See *Shlien v. Board of Regents*, 263 Neb. 465, 640 N.W.2d 643 (2002).

[90] Brief for appellee at 28.

[91] See *Fraser v. Temple*, 173 Neb. 367, 113 N.W.2d 319 (1962).

[92] *Id*.

[93] See § 30-2409.

court's finding that the decedent was "very competent and aware of her surroundings and situation," this evidence establishes that the decedent was aware of these transactions at the times they were occurring. Thus, the cause of action accrued with each transaction. As personal representative, Heiden stands in the decedent's shoes. The decedent's knowledge binds the estate. Upon our de novo review, we conclude that the statute of limitations bars any recovery for money Adelung received prior to February 1, 2012.

### (c) February Through December 2012: Before NUPOAA's Operative Date

[27,28] In this section, we address the money Adelung received from or on behalf of the decedent prior to the operative date of the NUPOAA. The 2008 power of attorney was in effect throughout this period. A power of attorney authorizes another to act as one's agent.[94] An agency is a fiduciary relationship resulting from one person's manifested consent that another may act on behalf and subject to the control of the person manifesting such consent and, further, resulting from another's consent to so act.[95]

### (i) Duty Under Power of Attorney

[29,30] During this period of time, the duty of an agent under a power of attorney was well established; thus, we recall the general principles establishing that duty. An agent and principal are in a fiduciary relationship such that the agent has an obligation to refrain from doing any harmful act to the principal, to act solely for the principal's benefit in all matters connected with the agency, and to adhere faithfully to the instructions of the principal, even at the expense of the agent's own interest.[96] An attorney in fact, under the duty of loyalty, always has the obligation to act in the best interest

---

[94] *Crosby v. Luehrs, supra* note 39.

[95] *Id*.

[96] *Archbold v. Reifenrath, supra* note 39.

of the principal unless the principal voluntarily consents to the attorney in fact's engaging in an interested transaction after full disclosure.[97]

[31,32] With respect to gifts, we articulated a related rule. No gift may be made by an attorney in fact to himself or herself unless the power to make such a gift is expressly granted in the instrument and there is shown a clear intent on the part of the principal to make such a gift.[98] The basic policy concern underlying the law that forbids self-dealing is not linked to any duty an agent may have to third parties, but is primarily addressed to the potential for fraud that exists when an agent acting pursuant to a durable power of attorney has the power to make gifts, especially after the principal becomes incapacitated.[99]

[33] Closely related is a rule of strict construction. Powers of attorney are by necessity strictly construed, and broad encompassing grants of power are to be discounted.[100]

### (ii) Collection of Farm Rents

Adelung argues that he did not use the power of attorney to collect the farm rents. Thus, he argues, his duty to the decedent under the power of attorney was not implicated. We disagree.

Adelung relies upon our decision in *Eggleston v. Kovacich*,[101] but he reads it too broadly. There, we stated that the defendant did not use the power of attorney when the principal herself signed signature cards and the defendant also signed them but only as a co-owner on a multiple-party account that provided for a right of survivorship. In other words, because the principal acted on her own behalf and the agent did not

---

[97] *Crosby v. Luehrs, supra* note 39.

[98] *Id.*

[99] *Id.*

[100] *Archbold v. Reifenrath, supra* note 39.

[101] *Eggleston v. Kovacich*, 274 Neb. 579, 742 N.W.2d 471 (2007).

sign for the principal, we said he did not "use" the power of attorney.[102] That case does not stand for the proposition that an agent's status must be disclosed or that express reference must be made in using a power of attorney. There, the principal acted directly and the agent did not act as an agent regarding those accounts.

[34] The record here is clear that at all times, the decedent owned a life estate in the farm. A life tenant is entitled to and owns by absolute title everything in the nature of income, profit, and gain realized or accrued from the property during his or her tenancy.[103] There is no evidence that she ever terminated the life estate before her death. Nor is there any evidence that at any time after she began allowing Adelung to collect the rents, she collected any rents herself.

[35] Even before the 2008 power of attorney, Adelung collected the farm rents as the decedent's agent. An agency relationship may be implied from the words and conduct of the parties and the circumstances of the case evidencing an intention to create the relationship irrespective of the words or terminology used by the parties to characterize or describe their relationship.[104] The circumstances here show that an agency relationship existed prior to the 2008 power of attorney. The 2008 power of attorney simply created a more extensive, formal agency relationship.

[36] Other than Adelung's relationship as the decedent's agent, the record does not establish any basis during the decedent's lifetime enabling Adelung to collect the farm rents. An agent has a duty to account to his or her principal for all property or funds which he or she has received or paid out on behalf of the principal.[105] That is precisely the nature of this action.

---

[102] *Id*. at 594, 742 N.W.2d at 484.

[103] See *Slocum v. Bohuslov*, 164 Neb. 156, 82 N.W.2d 39 (1957).

[104] *Koricic v. Beverly Enters. - Neb.*, 278 Neb. 713, 773 N.W.2d 145 (2009).

[105] *Cheloha v. Cheloha, supra* note 14.

### (iii) Power of Attorney

We read all of Adelung's arguments regarding the 2008 power of attorney to rely upon the NUPOAA. We have already rejected Adelung's argument that the NUPOAA applies to his actions under the power of attorney prior to the NUPOAA's operative date. Strictly construing the power of attorney in light of the common law that controlled his duties to the decedent at that time, we see no merit to any arguments he asserts regarding his liability for actions taken prior to January 1, 2013.

### (iv) Laches

Adelung asserts that we should apply the equitable defense of laches. He asserts that if the decedent "had truly wanted [him] to stop receiving the money involved in this action, [she] would have been guilty of inexcusable neglect for allowing these transactions to go on so long and allowing so much potential monetary liability to accumulate."[106] We disagree.

[37-39] The defense of laches is not favored in Nebraska.[107] Laches occurs only if a litigant has been guilty of inexcusable neglect in enforcing a right and his or her adversary has suffered prejudice.[108] Laches does not result from the mere passage of time, but because during the lapse of time, circumstances changed such that to enforce the claim would work inequitably to the disadvantage or prejudice of another.[109]

We are not persuaded that laches has any application here. We have already determined that the statute of limitations applies to bar collection of money Adelung received prior to February 1, 2012. His argument seems to be focused on the years of his life when he devoted his time and attention to keeping the decedent on the farm. But that changed in 2010,

---

[106] Brief for appellant at 42.

[107] *Cleaver-Brooks, Inc. v. Twin City Fire Ins. Co.*, 291 Neb. 278, 865 N.W.2d 105 (2015).

[108] *Id.*

[109] *Id.*

when the decedent moved to an assisted living facility. We see nothing about his circumstances between February 1, 2012, and January 1, 2013, that would support a laches defense.

### (d) January 2013 to Decedent's Death: After NUPOAA's Operative Date

#### (i) Effect of NUPOAA

As we have already explained, the NUPOAA applies to powers of attorney created before its operative date.[110] The NUPOAA also applies to a judicial proceeding commenced, as this one was, after that date.[111] And, obviously, the provision of § 30-4045(4), regarding acts done before the operative date, does not apply to the time period we consider in this part of our analysis.

#### a. Rule of Strict Construction

Adelung argues that § 30-4024(5) altered the common-law rule of strict construction of powers of attorney. That section states, "Subject to subsections (1), (2), and (4) of [§ 30-4024], if the subjects over which authority is granted in a power of attorney are similar or overlap, the broadest authority controls."[112] At least as to gifts made by an agent, we disagree.

First, by its terms, § 30-4024(5) is "[s]ubject to" § 30-4024(1). And § 30-4024(1) authorizes an agent to "[m]ake a gift," but, in relevant part, "only if the power of attorney expressly grants the agent the authority." The plain language of the statutory text requires an express grant of authority.

The comment to the section of the uniform act corresponding to § 30-4024(1) explains that the uniform act "enumerates the acts that require an express grant of specific authority and which may not be inferred from a grant of general authority."[113] This approach, the comment explains, "follows a

---

[110] See § 30-4045(1).

[111] See § 30-4045(2).

[112] § 30-4024(5).

[113] Unif. Power of Attorney Act § 201, comment, 8B U.L.A. 226 (2014).

growing trend among states to require express specific author-ity for such actions as making a gift."[114] The comment identi-fies the rationale for this approach: "the risk those acts pose to the principal's property and estate plan. Although risky, such authority may nevertheless be necessary to effectuate the prin-cipal's property management and estate planning objectives."[115] We do not perceive any legislative intention to shield gift mak-ing under a power of attorney from strict construction. Indeed, the uniform act's comment suggests otherwise.

Second, the comment notes, "Ideally, these are matters about which the principal will seek advise [sic] before granting authority to an agent."[116] Here, the attorney who drafted the 2008 power of attorney testified that he "drafted this docu-ment for [Adelung]" and that he "[n]ever met, never talked to [the decedent]." He recalled that there "may have been some conversation," presumably with Adelung, about "whether there need[ed] to be a gifting clause or not." He could not recall the purpose for including the gifting clause, but testified there "had to be some type of a conversation that led [him] to believe there needed to be the gifting clause." And, again, he confirmed that the conversation was not with the decedent. Obviously, the decedent did not seek that attorney's advice.

Third, the comment goes on to state that "[n]otwithstand-ing a grant of authority to perform any of the enumerated acts . . . , an agent is bound by the mandatory fiduciary duties set forth in [the uniform act's equivalent of § 30-4014(1)] as well as the default duties that the principal has not modified."[117] These include acting in accordance with the "principal's best interest,"[118] in "good faith,"[119] and "only within the scope

---

[114] *Id.*

[115] *Id.*, 8B U.L.A. at 226-27.

[116] *Id.*, 8B U.L.A. at 227.

[117] *Id.*

[118] § 30-4014(1)(a).

[119] § 30-4014(1)(b).

of authority granted, or reasonably implied by, the grant of authority in the power of attorney."[120]

[40] Finally, § 30-4021 states that "[u]nless displaced by a provision of the [NUPOAA], the principles of law and equity supplement the act." We are not persuaded that the drafters of the uniform act or the Nebraska Legislature intended to loosen the rule of strict construction with respect to gift making. Thus, we hold that the rule of strict construction regarding authority under a power of attorney to make gifts continues under the NUPOAA.

b. Authority to Make Gifts

Omitting the exoneration clause, we recall the specific language employed in the 2008 power of attorney. It stated:

**Gifting.** To carry out on my behalf any plan or pattern of gifting to my issue, including gifting to my Agent, which had apparently been established or clearly contemplated by myself. In determining whether to initiate or continue any such gifting plan, my Agent shall give consideration to the size of my estate in light of what might reasonably be anticipated as my future needs and the potential federal estate taxes which may be due upon my death in order that such taxes may be lessened or eliminated. If a gifting plan has not been initiated by me, my Agent shall have complete discretion to make gifts to my issue, including making gifts to my Agent, after consideration of the foregoing factors.

This gifting clause was, at most, a general grant. It did not specifically refer to the farm rentals. Nor did it refer to checks payable to Adelung or his spouse or child.

[41] The NUPOAA limits gifts made via a general grant of authority in two ways. First, § 30-4040(2) states that "language in a power of attorney granting general authority with respect to gifts" authorizes gifts, as applicable here, only "(a) . . . in an amount per donee not to exceed the annual

---

[120] § 30-4014(1)(c).

dollar limits of the federal gift tax exclusion." But more important, § 30-4040(3) permits a gift "only as the agent determines is consistent with the principal's objectives if actually known by the agent and, if unknown, as the agent determines is consistent with the principal's best interest based on all relevant factors." The statute identifies five specific factors, including the value and nature of the principal's property; the principal's foreseeable obligations and need for maintenance; minimization of taxes; eligibility for a benefit, program, or assistance; and the principal's personal history of making gifts.[121]

As the comment to this section of the uniform act makes clear, to the extent a principal's objectives "may potentially conflict with an agent's default duties under the [NUPOAA], the principal should carefully consider stating those objectives in the power of attorney, or altering the default rules . . . , or both."[122] Adelung does not claim that the 2008 power of attorney altered the default rules.

The stated objectives did not support the gifts. The power of attorney stated only two: "what might reasonably be anticipated as [the decedent's] future needs" and lessening or eliminating federal estate taxes. Neither objective was furthered by these gifts. Heiden testified that Adelung told her the decedent "had less than $50,000 in the bank, because [the decedent] was broke." A certified public accountant testified that "currently, you could pass through your estate over 12 million without any federal estate tax."

Upon our de novo review, we are not persuaded that the provisions of the NUPOAA authorized the gifts Adelung made on the decedent's behalf. In reaching this conclusion, we give weight to the county court's factual findings.

### c. Exoneration Clause

Adelung also relies upon the exoneration clause of the 2008 power of attorney, which states:

---

[121] See § 30-4040(3)(a) to (e).

[122] Unif. Power of Attorney Act § 217, comment, 8B U.L.A. 248 (2014).

No individual or entity shall have the right, by court action or otherwise, to compel the initiation or continuation of any type of gifting plan by my Agent and no individual or entity shall have any claim or right of reimbursement from my Agent for initiating or continuing a gifting plan or for not initiating or continuing a gifting plan; it being my intention hereby that my Agent shall have absolute discretion and shall bear no liability for any decision made.

Adelung focuses on § 30-4015(1), which states that a provision "relieving an agent of liability for breach of duty is binding on the principal . . . except to the extent the provision: (a) [r]elieves . . . for breach of duty committed dishonestly, with an improper motive, or with reckless indifference[.]" He claims not to have acted in any of these ways.

[42] In passing, Adelung acknowledges § 30-4015(1)(b). Under § 30-4015(1)(b), an exoneration clause in a power of attorney will not relieve an agent of liability if the clause was "inserted as a result of an abuse of a confidential or fiduciary relationship with the principal." He asserts that at the time of the 2008 power of attorney, he "was not in a confidential or fiduciary relationship with [the decedent]."[123] We disagree.

The comment to the uniform act provision mirroring § 30-4015(1) explains that the language in subsection (1)(b) "provides . . . an additional measure of protection for the principal."[124] But the Nebraska Legislature was not satisfied with only that measure of protection. It supplemented the uniform act by adding § 30-4015(2), which states that an "exculpatory term drafted or caused to be drafted by an agent is invalid as an abuse of fiduciary or confidential relationship unless the agent proves that the exculpatory term is fair under the circumstances and that its existence and contents were adequately communicated to the principal."

---

[123] Brief for appellant at 36.

[124] Unif. Power of Attorney Act § 115, comment, 8B U.L.A. 208 (2014).

At the time of the 2008 power of attorney, Adelung had already been acting for some years as the decedent's agent in collecting the farm rents. That activity imposed upon him a fiduciary relationship. This alone seems sufficient under § 30-4015(1)(b) to defeat the exoneration clause. But § 30-4015(2) reinforces our conclusion. By hiring his own attorney to draft the power of attorney, Adelung "caused [the exoneration clause] to be drafted."[125] Section 30-4015(2) imposed upon him the burden to prove that the clause was fair and adequately communicated to the decedent. He did not do so. The attorney who prepared it never spoke with the decedent. The notary public who administered the decedent's acknowledgment did not recall discussing with her what the document authorized Adelung to do and denied that he would "normally" do so. Even Adelung did not claim that he provided any explanation to the decedent regarding its contents and meaning. He merely left it with her the day before it was signed and recalled her statement that she "had looked it over." Adequate communication required more than this.

Adelung also asserts that Heiden waived the right to contest the exoneration clause, by failing to attack it in her petition. He relies upon a rule of pleading recited in a case long ago, that "where the illegality of an agreement is not suggested by the plaintiff's pleadings or proofs it must, in order to be available to the adverse party, be especially pleaded."[126] We are not sure that this rule survives under our current pleading rules,[127] but, in any event, the challenge to the exoneration clause was asserted by the proofs.

We find no merit to Adelung's arguments attempting to rely upon the exoneration clause. The Legislature demanded an extra measure of protection regarding such provisions. This appeal illustrates why it did so.

---

[125] See § 30-4015(2).

[126] *Fitzgerald v. Fitzgerald & Mallory Construction Co.*, 44 Neb. 463, 485, 62 N.W. 899, 907 (1895).

[127] See Neb. Ct. R. Pldg. § 6-1109 (rev. 2008) (pleading special matters).

#### d. Arguments Not Raised Below

[43] On appeal, Adelung raises two arguments for the first time. He argues that the NUPOAA authorizes an agent to perform the acts necessary to maintain the customary standard of living of the principal's close family members, including the principal's children. He also contends that under the NUPOAA, agents are entitled to reasonable compensation, and that he is not liable for the decedent's subsequent qualification for Medicaid. Because appellate courts do not consider arguments and theories raised for the first time on appeal,[128] we decline to further consider these arguments.

#### (ii) Laches

As we discussed in a preceding section, Adelung relies upon the defense of laches. There, we determined that it did not apply to the period from February through December 2012. For the same reasons, it does not apply to the time period from January 2013 to the decedent's death.

### VI. CONCLUSION

Because the county court had jurisdiction of the proceeding, we have jurisdiction of this appeal. We find no merit to Heiden's cross-appeal. Except as to the defense of the statute of limitations, Adelung's appeal lacks merit. Upon our de novo review, we affirm the judgment as modified and limited to Adelung's actions after February 1, 2012, and we remand the cause to the county court with directions to calculate the amount of the modified judgment in conformity with this opinion.

AFFIRMED AS MODIFIED, AND CAUSE
REMANDED WITH DIRECTIONS.

FUNKE, J., not participating.

---

[128] *Junker v. Carlson*, 300 Neb. 423, 915 N.W.2d 542 (2018).